Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
Southern California Lumber Industry Retirement
Fund and Board of Trustees of the Southern
California Lumber Industry Retirement Fund

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND AND BOARD OF TRUSTEES OF SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND <br><br> Plaintiffs, <br> v. <br><br> PEERY BROS. LUMBER CO., INC., a California corporation, <br><br> Defendant. | CASE NO. 2:20-cv- 04565 <br><br> **COMPLAINT** <br><br> Collection of Withdrawal Liability pursuant to ERISA Section 4221(b)(1) (29 U.S.C. § 1401(b)(1)) |

## **COMPLAINT**

Plaintiffs, Southern California Lumber Industry Retirement Fund and Board of Trustees of the Southern California Lumber Industry Retirement Fund, for a cause of action against Defendant Peery Bros. Lumber Co., Inc., allege as follows:

1

## JURISDICTION AND VENUE

1.      This is an action for collection of withdrawal liability, interest, and attorneys' fees incurred by an employer as a result of a withdrawal from a multiemployer pension plan, which action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq*.

2.      This Court has jurisdiction over this action under ERISA Sections 502(e), 502(f), and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3.      Venue lies in this Court under ERISA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Fund is administered at its principal place of business in Los Angeles, California.

## PARTIES

4.      Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.      Plaintiff Board of Trustees of the Southern California Lumber Industry Retirement Fund ("Board of Trustees") is comprised of the present trustees who are the named fiduciaries of the Fund within the meaning of ERISA Section 402(a), 29 U.S.C. §1102(a), and is the plan sponsor of the Fund within the meaning of ERISA Sections 3(16)(B)(iii) and 4001(a)(10), 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10). The Board of Trustees administers the Fund in Los Angeles, California.

6.      Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants, and beneficiaries for the purpose of collecting withdrawal liability.

7.      The Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 16 of the Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.  A true and correct copy of the Fund's Trust Agreement is attached hereto as Exhibit 1.

COMPLAINT

8.     Defendant Peery Bros. Lumber Co., Inc. ("Peery") is a corporation organized under the laws of the State of California, with a status of "FTB suspended". A true and correct copy of their status detail from the California Business Search is attached hereto as Exhibit 2.

9.     At all times relevant to this action, Defendant has been an "employer" as the term is defined by ERISA Section § 3(5), 29 U.S.C. § 1002(5) and was engaged in an industry affecting commerce, as defined by Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

## <u>CLAIM FOR RELIEF</u>

(Default on Payment Obligation for Withdrawal Liability)

10.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 9 of this Complaint as though fully set forth herein.

11.    During all relevant times, Defendant Peery was bound by a Collective Bargaining Agreement ("CBA") with Cabinet Makers, Millmen and Industrial Carpenters Local Union 721("Local Union"), under which Defendant Peery was required to make contributions to the Fund on behalf of its covered employees. A true and correct copy of the most recent CBA is attached hereto as Exhibit 3.

12.    Defendant ceased making contributions to the Plaintiff Fund in 2018.

13.    As a result, Plaintiffs provided Defendant Peery with a Notice of Complete Withdrawal Liability and Demand for Payment ("Notice and Demand") via certified mail, dated October 29, 2019, pursuant to ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1).

14.    The Notice and Demand included a detailed calculation of how the amount of the withdrawal liability assessment was calculated by the actuary and provided Defendant with a payment schedule for the withdrawal liability assessment in accordance with the requirements of ERISA Sections 4219(c), 29 U.S.C. § 1399(c). A true and correct copy of the Notice and Demand with the detailed calculation is attached hereto as Exhibit 4.

15.    The Notice and Demand informed Defendant of its right to make payments according to a schedule. In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuary determined that under the payment schedule, Defendant was to make 240 monthly payments of $482.14, or a lump sum payment of $92,728.

16.    Defendant did not initiate arbitration pursuant to ERISA Section 4221(a)(1), 29 U.S.C. § 1401(a)(1), and the time to initiate arbitration has expired.

17.    Defendant failed to make any payments to Plaintiffs, and as a result, on January 10, 2020, Plaintiffs provided via certified mail a Notice of Failure to Pay Withdrawal Liability and Demand for Cure ("Demand for Cure") to Defendant in accordance with ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5). A true and correct copy of the Demand for Cure is attached hereto as Exhibit 5.

18.    Defendant's failure to make the required withdrawal liability payments to the Plaintiff Fund has caused it to be in default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5).

19.    Defendant's default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5) results in the entire withdrawal liability assessment to be due and owing.

20.    Plaintiffs' actuary has calculated that Defendant's full assessment of withdrawal liability is $173,105.

21.    The failure to pay its withdrawal liability subjects an employer to interest, attorney's fees and costs.

23.    By reason of the foregoing, Defendant is indebted to Plaintiffs in the sum of $173,105, plus interest, attorneys' fees, and costs.

WHEREFORE, Plaintiffs request the following relief:

(i)    the past due withdrawal liability payment of $173,105;

(ii)    interest in accordance with the prevailing market rate pursuant to §4219(c)(6) of ERISA, 29 U.S.C. § 1399(c)(6), on the total amount

of unpaid withdrawal liability due and owing from December 28, 2019;

(iii)   Plaintiffs' reasonable attorneys' fees and costs of the action incurred herein accordance with the Trust Agreement and ERISA Sections 502(g)(2)(D) and 4301(e), 29 U.S.C. §§1132(g)(2)(D) and 1451(e); and

(iv)   Such other legal and equitable relief as the Court deems appropriate.

Dated: <u>May 21, 2020</u>

/s/ Valentina S. Mindirgasova
Kerry K. Fennelly
Valentina S. Mindirgasova
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100
(760) 747-1188
kfennelly@kraw.com
vmindirgasova@kraw.com

Attorneys for Plaintiffs

COMPLAINT

# EXHIBIT 1

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 6

# TRUST AGREEMENT

## *GOVERNING THE*

## SOUTHERN CALIFORNIA LUMBER INDUSTRY

## *RETIREMENT FUND*

As Revised and Restated
August 11, 2011

Administrative Office
Benefit Programs Administration



Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 7

## TABLE OF CONTENTS

| | Page |
|---|---|
| PREAMBLE | 1 |
| ARTICLE I DECLARATION OF TRUST | 2 |
| 1. NAME | 2 |
| 2. PURPOSE | 2 |
| 3. DURATION OF TRUST FUND | 2 |
| 4. TERM OF TRUST AGREEMENT | 2 |
| ARTICLE II DEFINITIONS | 2 |
| ARTICLE III THE TRUSTEES | 4 |
| 1. THE BOARD OF TRUSTEES | 4 |
| 2. STATUTORY CAPACITIES OF TRUSTEES | 4 |
| 3. AGENTS FOR SERVICE OF PROCESS | 4 |
| 4. NUMBER OF TRUSTEES | 5 |
| 5. ALTERNATE TRUSTEES | 5 |
| 6. IDENTITY OF PRESENT TRUSTEES | 5 |
| 7. APPOINTMENT OF SUCCESSOR EMPLOYER TRUSTEES | 5 |
| 8. APPOINTMENT OF SUCCESSOR LABOR ORGANIZATION TRUSTEES | 6 |
| 9. INDIVIDUALS DISQUALIFIED FROM SERVING AS TRUSTEES | 6 |
| 10. ACCEPTANCE OF APPOINTMENT BY TRUSTEES | 6 |
| 11. TERM OF APPOINTMENT | 6 |
| 12. TERMINATION OF APPOINTMENT | 7 |
| 13. TERMINATION OF APPOINTMENT FOR FAILURE TO ATTEND MEETINGS | 7 |
| 14. TERMINATION OF APPOINTMENT FOR CONVICTION OF A CRIME | 7 |
| 15. TERMINATION OF APPOINTMENT FOR MENTAL INCAPACITY | 7 |
| 16. RESIGNATION OF APPOINTMENT | 7 |
| 17. VACANCIES | 7 |
| 18. RETURN OF BOOKS AND RECORDS | 7 |
| ARTICLE IV TRUST FUND ADMINISTRATION | 8 |
| 1. MANNER OF VOTING | 8 |
| 2. CONSTITUTION OF A QUORUM | 8 |
| 3. MOTIONS | 8 |
| 4. PROHIBITION OF PROXIES | 8 |
| 5. REGULAR MEETINGS | 8 |
| 6. SPECIAL MEETINGS | 8 |
| 7. ACTION WITHOUT A FORMAL MEETING | 8 |
| 8. ARBITRATION OF DEADLOCKED ISSUES | 9 |
| 9. ELECTION OF OFFICERS | 9 |
| 10. DUTIES OF OFFICERS | 10 |
| 11. AUTHORIZED SIGNATURES | 10 |
| 12. COMPENSATION AND EXPENSES | 10 |
| 13. BENEFITS TO TRUSTEES NOT PROHIBTED | 11 |

i

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 8

## TABLE OF CONTENTS

Page

ARTICLE V   PARTICIPATION ................................................................. 11
  1. BARGAINING UNITS ENTITLED TO PARTICIPATE ................... 11
  2. OTHER BARGAINING UNITS ...................................................... 11
  3. STAFF EMPLOYEES OF PARTICIPATING LABOR ORGANIZATIONS ....... 11
  4. STAFF EMPLOYEES OF PARTICIPATING EMPLOYER ASSOCIATIONS .. 12
  5. TRUST FUND EMPLOYEES ......................................................... 12
  6. UNAUTHORIZED PARTICIPATION ............................................ 12

ARTICLE VI   TRUSTEE RESPONSIBILITIES .............................................. 12
  1. GENERAL DUTY - RECEIPT OF CONTRIBUTIONS AND
     ADMINISTRATION OF BENEFIT PLAN .................................... 12
  2. COMPLIANCE WITH THE INTERNAL REVENUE CODE ............. 13
  3. FUNDING STANDARDS ............................................................. 13
  4. BASIS OF PAYMENTS TO AND FROM TRUST FUND ............... 13
  5. APPLICATION OF TRUST FUND ASSETS ................................ 13
  6. FIDUCIARY STANDARDS ........................................................ 14
  7. DEPOSITS ................................................................................. 14
  8. INVESTMENTS .......................................................................... 14
  9. SPECIFICALLY PERMITTED INVESTMENTS ........................... 15
  10. TITLE TO INVESTMENTS AND OTHER ASSETS ..................... 15
  11. FIDELITY BOND ....................................................................... 15
  12. RECORDS ................................................................................. 16
  13. ANNUAL AUDIT ...................................................................... 16
  14. ANNUAL ACTUARIAL STATEMENT ........................................ 16
  15. SUMMARY PLAN DESCRIPTION ............................................. 16
  16. ANNUAL REPORT .................................................................... 17
  17. STATEMENTS OF ACCRUED PENSION BENEFITS ................... 17
  18. PENSION FUNDING NOTICE .................................................... 18
  19. INCOME TAX WITHHOLDING AND REPORTING ..................... 18
  20. DOCUMENTS TO BE EXAMINED OR FURNISHED ................... 18
  21. PROCEDURE FOR ESTABLISHING FUNDING POLICY ............ 19
  22. PAYMENT OF PLAN TERMINATION INSURANCE PREMIUMS ......... 19
  23. PROCEDURE FOR REVIEW OF DENIED BENEFIT CLAIMS .......... 20

ARTICLE VII   ALLOCATION OR DELEGATION
     OF TRUSTEE RESPONSIBILITIES ...................................... 20
  1. ALLOCATION OF RESPONSIBILITIES TO COMMITTEE ........... 20
  2. DELEGATION OF INVESTMENT RESPONSIBILITIES ............... 21
  3. DELEGATION OF OTHER RESPONSIBILITES ......................... 21
  4. REVIEW OF PERFORMANCE .................................................. 21

ARTICLE VIII   TRUSTEE POWERS .......................................................... 21
  1. GENERAL POWERS .................................................................. 21
  2. SPECIFIC POWERS DISCRETIONARY ..................................... 22
  3. ADMINISTRATION OF EMPLOYEE BENEFIT PLAN ................. 22

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 9

ii

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 4. | ADDITIONAL BENEFIT PLANS | 22 |
| 5. | MEANS OF PROVIDING BENEFITS | 22 |
| 6. | FACILITY OF PAYMENT | 23 |
| 7. | ADMINISTRATIVE MANAGER | 23 |
| 8. | CORPORATE CO-TRUSTEE | 23 |
| 9. | OTHER PROFESSIONAL AND NON-PROFESSIONAL HELP | 23 |
| 10. | OBTAINING OF NECESSARY PREMISES, EQUIPMENT AND SUPPLIES | 23 |
| 11. | INSURANCE | 24 |
| 12. | BORROWING MONEY | 24 |
| 13. | RESERVE FUNDS | 24 |
| 14. | PAYMENT OF TAXES | 24 |
| 15. | REFUNDS OF CONTRIBUTIONS ERRONEOUSLY PAID | 24 |
| 16. | PROSECUTION OF LEGAL ACTIONS OR CLAIMS | 25 |
| 17. | DEFENSE OF LEGAL ACTIONS OR CLAIMS | 25 |
| 18. | COMPROMISE OF LEGAL ACTIONS OR CLAIMS | 25 |
| 19. | PENALTIES FOR FALSE OR WITHHELD INFORMATION | 25 |
| 20. | CORRECTION OF ERRORS | 25 |
| 21. | PARTICIPATION IN NON-PROFIT EDUCATIONAL ORGANIZATIONS | 26 |
| 22. | RECIPROCITY | 26 |
| 23. | COORDINATED ADMINISTRATION | 26 |
| 24. | MERGERS | 26 |
| 25. | ELIGIBLE ROLLOVER DISTRIBUTIONS | 27 |
| 26. | INTERPRETATION AND APPLICATION OF DOCUMENTS | 27 |
| 27. | ADOPTION AND IMPLEMENTATION OF A FUNDING IMPROVEMENT AND REHABILITATION PLAN | 27 |
| **ARTICLE IX** | **CONTRIBUTIONS AND COLLECTIONS** | 28 |
| 1. | CONTRIBUTION REPORTING FORMS | 28 |
| 2. | CONTRIBUTION AMOUNT FOR PENSION BENEFITS | 28 |
| 3. | METHOD OF COMPUTING CONTRIBUTIONS | 28 |
| 4. | CONTRIBUTION DUE DATE | 29 |
| 5. | DELINQUENT CONTRIBUTIONS | 29 |
| 6. | AUDIT OF EMPLOYER BOOKS AND RECORDS | 29 |
| 7. | EMPLOYER LIABILITY | 30 |
| 8. | LIQUIDATED DAMAGES, INTEREST, ATTORNEYS FEES AND COSTS | 30 |
| 9. | ASSIGNMENT OF CLAIMS TO THIRD PERSON AND ATTORNEY FEES AND COSTS | 30 |
| 10. | VENUE OF COLLECTION ACTIONS | 30 |
| 11. | PROTECTION OF EMPLOYEES IN CASES OF DELINQUENCY | 31 |
| 12. | COORDINATION WITH PROVISIONS IN COLLECTIVE BARGAINING AGREEMENTS | 31 |
| **ARTICLE X** | **EMPLOYER WITHDRAWAL LIABILITY** | 31 |

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 10

# TABLE OF CONTENTS

Page

1. UNFUNDED VESTED LIABILITY .................................................. 31
2. ALLOCATION OF LIABILITY .................................................... 31
3. ADOPTION OF ADMINISTRATIVE PROCEDURES AND RULES ............... 32
4. DETERMINATION OF AMOUNT OF UNFUNDED VESTED BENEFITS
   ALLOCABLE TO WITHDRAWING EMPLOYER ................................ 32
5. DETERMINATION OF THE SUM OF ALL CONTRIBUTIONS MADE .......... 32
6. PAYMENT OF WITHDRAWAL LIABILITY IN MONTHLY INSTALLMENTS .. 32
7. NOTICE OF POTENTIAL WITHDRAWAL LIABILITY ....................... 32
8. EXCEPTION FROM LIABILITY ................................................ 33

ARTICLE XI   LIMITATIONS ......................................................... 33

1. LIABILITES AND DEBTS OF TRUST FUND ................................. 33
2. PERSONAL LIABILITIES OF TRUSTEES .................................... 33
3. JUDGMENTS AGAINST TRUST FUND ....................................... 34
4. PARTICIPATING PARTIES' RIGHTS ......................................... 34
5. CESSATION OF PARTICIPATION ............................................ 34
6. PROTECTION OF TRUST FUND, CONTRIBUTIONS AND BENEFITS ....... 34
7. RELIANCE UPON WRITTEN DOCUMENTS ................................. 35
8. AGENTS OF TRUST FUND ................................................... 35

ARTICLE XII   MISCELLANEOUS ................................................... 35

1. TRUST FUND OFFICES ...................................................... 35
2. APPLICABLE LAWS AND REGULATIONS ................................... 35
3. SERVICE IN MORE THAN ONE FIDUCIARY CAPACITY ................... 36
4. NOTICES ..................................................................... 36
5. SEVERABILITY ............................................................... 36
6. TITLES AND WORDS ........................................................ 36
7. INFORMATION TO BE FURNISHED AND DISTRIBUTED .................. 36
8. RIGHTS OF EMPLOYEES ..................................................... 36
9. CONFLICT WITH COLLECTIVE BARGAINING AGREEMENTS ............. 37
10. ACCEPTANCE BY EMPLOYER ............................................. 37

ARTICLE XIII   AMENDMENTS AND TERMINATION ............................. 37

1. AMENDMENTS ............................................................... 37
2. TERMINATION ............................................................... 37
3. ALLOCATION UPON TERMINATION ........................................ 37

SIGNATURES ......................................................................... 39

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

IV
EXHIBIT 1 to COMPLAINT - 11

## PREAMBLE

Whereas, on May 1, 1957 a "Trust Agreement" was executed by certain employers and labor organizations in the lumber and woodworker industries, and a corporate co-trustee creating the:

### SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND, AND

Whereas, said document did also create an employee pension benefit plan presently known generally as the:

### SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT PLAN, AND

Whereas, said document was subsequently amended on several occasions, including a revision made effective January 1, 1976, which encompassed amendments required by the Employee Retirement Income Security Act of 1974, and

Whereas, effective September 1, 1986, the "Trust Agreement" was revised and the signatory employers and labor organizations (or their successors in interest) resigned their powers and authorities as signatory parties and vested those powers and authorities in the Board of Trustees, and

Whereas, the Board of Trustees has now determined to further revise and restate the existing "Trust Agreement" effective August 11, 2011 so as to include amendments which have been made subsequent to September 1, 1986, and to take into account contemporary needs and conditions.

NOW THEREFORE, the Trustees do hereby revise and restate the "Trust Agreement" effective August 11, 2011 as follows:

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 12

1

# ARTICLE I
## Declaration of Trust

1.   **Name**
     The Board of Trustees hereby reaffirms the declaration and establishment of a Trust Fund known as the

Southern California Lumber Industry
Retirement Fund.

The Board of Trustees may hold property, enter into contracts, and in all matters act on behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.   **Purpose**
     The purpose of the Trust Fund is to provide an entity to which contributions from participating employers can be paid and through which the Trustees can administer an employee pension benefit plan for the participating employees on whose behalf the contributions have been paid, and their beneficiaries.

3.   **Duration of Trust Fund**
     The Trust Fund shall continue in existence on an indefinite basis, contemporaneously with the term of this Trust Agreement.

4.   **Term of Trust Agreement**
     This revised and restated Trust Agreement shall be effective as of August 11, 2011, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIII hereof.

# ARTICLE II
## Definitions

The following definitions shall govern in this Trust Agreement:

1.   *"Beneficiary"* — any person designated by a participating employee or dependent, or by the terms of the Benefit Plan, to receive benefits, if any, upon the death of such participating employee or dependent.

2.   *"Benefit Plan"* — the Southern California Lumber Industry Retirement Plan administered by the Board of Trustees as provided for in Article VIII, Section 3 hereof. The term "Benefit Plan" shall also refer to such additional plan or plans that the Trustees may establish under the authority of Article VIII, Section 4 hereof.

2

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 13

3.   *"Collective bargaining agreement"* — a written agreement between a participating employer and a participating labor organization and any supplement, amendment, continuation, or renewal thereof, by the terms of which the employer is obligated to make contributions to the Trust Fund.

4.   *"Contributions"* — the payments required of a participating employer pursuant to the terms of a collective bargaining agreement, or special agreement, for the purpose of providing a Benefit Plan to the employees covered by said agreements and their beneficiaries.

5.   *"Participating employee"* — any individual employed by a participating employer who is covered by a collective bargaining agreement, or special agreement, and for whom the employer is required to make contributions to the Trust Fund, and former employees, all as more specifically defined in the terms of the Benefit Plan.

6.   *"Participating employer"* — any sole proprietorship, partnership, association, corporation, or joint venture, in the Southern California Lumber Industry that is party to a collective bargaining agreement and that satisfies the requirements of Article V hereof.

A participating labor organization, or the Trust Fund itself, shall also be considered "a participating employer" for the limited purpose of allowing the employees of such entities to participate in the Trust Fund, as permitted by Article V, Section 3 hereof.

7.   *"Participating employer association"* — any employer association that is party to a collective bargaining agreement with a participating labor organization and that satisfies the requirements of Article V, Section 4, hereof.

8.   *"Participating labor organization"* — the labor organizations named in Article V hereof and any other lawful labor organizations that represent employees in collective bargaining with employers and that satisfy the requirements of Article V hereof.

9.   *"Plan Year"* — the calendar year.

10.  *"Reciprocal Trust Fund"* — a trust fund with whom this Trust Fund has a Reciprocal Agreement, as provided for in Article VIII, Section 22 hereof.

11.  *"Corporate Co-Trustee"* — the Union Bank of California or other corporate banking institution which the Trustees have designated as Corporate Co-Trustee as provided for in Article VIII, Section 8, hereof.

12.  *"Southern California Lumber Industry"* — the term "Southern California Lumber Industry" shall include any employer or labor organization maintaining

3

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 14

and operating a place of business at any location in the Counties of Kern, Imperial, Inyo, Los Angeles, Mono, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, and Ventura in the State of California in the lumber and woodworking industry, excepting therefrom any who primarily employ furniture workers or construction workers. Any labor organization in the Southern California Lumber Industry may bring in employees covered by collective bargaining agreements with other employers not in the Southern California Lumber Industry, except employers in the furniture and construction industries.

13.  *"Special agreement"* — a written agreement between a participating employer and the Board of Trustees, and any supplement, amendment, continuation, or renewal thereof, that obligates the employer to make contributions to the Trust Fund for the purpose of providing a Benefit Plan to the employees covered by said agreement, and their beneficiaries.

14.  *"Trustees" or "Board of Trustees"* — the Trustees of the Trust Fund and their successors.

15.  *"Trust" or "Trust Fund"* — the entity created by this Trust Agreement, and all property and money held by such entity, including all contract rights and records.

# ARTICLE III
## The Trustees

**1.   The Board of Trustees**
The Trust Fund and the Benefit Plan shall be administered by a Board of Trustees on which the participating employers and participating labor organizations are equally represented.

**2.   Statutory Capacities of Trustees**
For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Trust Fund, by the employer Trustees; and the participating employees shall be represented by the labor organization Trustees.

For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974, the Trustees shall be considered as "named fiduciaries," "fiduciaries," the "plan administrator," and the "plan sponsor," as those terms are used in the Act.

**3.   Agents for Service of Process**
Each Trustee shall be considered as an agent of the Trust Fund for the purpose of accepting service of legal process, provided that the Trustees may

4

EXHIBIT 1 to COMPLAINT - 15

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

designate their administrative manager, or another person, as agent of the Trust Fund for this purpose.

4.   **Number of Trustees**

There shall be up to fourteen (14) Trustees of the Trust Fund, seven (7) of whom shall be employer Trustees representing the participating employers and seven (7) of whom shall be labor organization Trustees representing the participating employees.

5.   **Alternate Trustees**

There may also be up to fourteen (14) alternate Trustees, seven (7) of whom shall be alternate employer Trustees and seven (7) of whom shall be alternate labor organization Trustees.

In the event any employer Trustee is absent from any meeting of the Trustees he may designate an alternate employer Trustee to serve in his place and stead. If the absent employer Trustee fails to make such a designation, the employer Trustees who are present at the meeting may designate an alternate employer Trustee to serve in the place and stead of the absent Trustee.

In the event any labor organization Trustee is absent from any meeting he may designate an alternate labor organization Trustee to serve in his place and stead. If the absent labor organization Trustee fails to make such a designation, the labor organization Trustees who are present at the meeting may designate an alternate labor organization Trustee to serve in the place and stead of the absent Trustee.

The alternate Trustees, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular Trustees. When designated to serve for a regular Trustee, and while serving, an alternate Trustee shall have all of the power and responsibilities of a regular Trustee.

6.   **Identity of Present Trustees**

The Trustees serving as of the effective date of this Trust Agreement are as follows:

| Employer Trustees | Labor Organization Trustees |
|---|---|
| THOMAS C. HEYDORFF | PATRICK MCGINN |
| JOHN "BOGIE" NICOLS | WILLIAM K. MILLER |
| BRENT K. BERGLUND | FLOYD CLAY |
| WAYNE NOECKER | JAMES BERNSEN |
| | FERNANDO ROJAS |

7.   **Appointment of Successor Employer Trustees**

In the event of the termination of appointment, resignation, death, or incapacity of an employer Trustee, a successor employer Trustee shall be

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 16

provisionally appointed by majority action of the remaining employer Trustees. In making the appointment, the remaining employer Trustees shall attempt to select an individual from one of the major groups of participating employers, it being the intent that the employer Trustees as a body, constitute a fair cross section of the major groups of participating employers.

Notice of the provisional appointment shall be mailed by the administrative manager to all participating employers and shall become final thirty (30) days after such notice unless, in the meantime, participating employers representing 51% of participating employees should object, in writing, to the appointment.

In the event such an objection is filed, or in the event the employer Trustees cannot reach a majority agreement on a provisional appointment, the Trustees shall conduct a referendum election among all of the participating employers. Each employer may submit the name of one nominee and in the referendum each employer shall be entitled to one vote. Each vote will be weighted, however, by the number of employees for whom each employer is then making contributions to the Trust Fund (as measured by the number of employees reported on the employer's contribution reporting form received by the Trust Fund in the month prior to the election). The nominee who receives the largest number of votes shall be declared the new employer Trustee.

The Trustees shall have full authority to make the arrangements for the election, including the adoption of any election rules which they may deem appropriate. The costs of the election shall be chargeable to the Trust Fund.

8.    **Appointment of Successor Labor Organization Trustees**
In the event of the termination of appointment, resignation, death, or incapacity of a labor organization Trustee, a successor labor organization Trustee shall be appointed by the Executive Secretary-Treasurer of the Southwest Regional Council of Carpenters.    The appointment shall be announced in a written notice of appointment issued by the Executive Secretary-Treasurer to the Chairman and Secretary of the Board of Trustees.

9.    **Individuals Disqualified from Serving as Trustees**
No individual who has been convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974 shall be permitted to serve as a Trustee during the period of disqualification specified in the statute.

10.    **Acceptance of Appointment by Trustees**
Each Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of the Trust Agreement.

11.    **Term of Appointment**
Each Trustee shall serve until termination of appointment, resignation, death

6

EXHIBIT 1 to COMPLAINT - 17

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

or incapacity.

12.  **Termination of Appointment**

The appointment of an employer Trustee may be terminated, at any time, by majority action of the other employer Trustees.

The appointment of a labor organization Trustee may be terminated, at any time, by the Executive Secretary-Treasurer of the Southwest Regional Council of Carpenters.

13.  **Termination of Appointment for Failure to Attend Meetings**

The appointment of a Trustee shall be automatically terminated if such Trustee fails to attend three (3) consecutive meetings of the Trustees, without being excused from attendance by specific action of the remaining Trustees noted in the minutes.

14.  **Termination of Appointment for Conviction of a Crime**

The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974.

15.  **Termination of Appointment for Mental Incapacity**

The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

16.  **Resignation of Appointment**

A Trustee may resign his appointment at any time. Such resignation shall be effective upon the resignation date specified in the written notice of resignation addressed to the Chairman and Secretary of the Board of Trustees.

17.  **Vacancies**

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2, hereof.

18.  **Return of Books and Records**

In the event of the termination of appointment, resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary of the Board of Trustees, forthwith turn over to the Chairman or Secretary any and all records, books, documents, monies, and other property in the possession of the Trustee or under his control, or any electronic version thereof, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

7

EXHIBIT 1 to COMPLAINT - 18

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

# ARTICLE IV

## Trust Fund Administration

**1. Manner of Voting**

Any action to be taken by the Trustees shall require a favorable vote by the employer Trustees and by the labor organization Trustees, according to the unit method of voting. The employer Trustees shall have but one vote among them (which shall be determined by a majority of the employer Trustees present) and the labor organization Trustees shall have but one vote among them (which shall be determined by a majority of the labor organization Trustees present).

**2. Constitution of a Quorum**

To constitute a valid regular or special meeting of the Trustees, there must be present at least one-half (50%) of the total number of employer Trustees, or duly designated alternates, and one-half (50%) of the total number of labor organization Trustees, or duly designated alternates, then serving.

**3. Motions**

Any Trustee including the Chairman or Secretary may offer or second any motion or resolution presented for the Trustees' consideration.

**4. Prohibition of Proxies**

To encourage full attendance at meetings of the Trustees and due consideration of the matters being voted upon, there shall be no proxies. A Trustee must be present in order to cast a vote.

**5. Regular Meetings**

The Trustees shall hold regular periodic meetings consistent with the needs of the Trust Fund business, provided that there shall be at least two (2) regular meetings held during each calendar year. The Trustees shall determine the time and the place of all such meetings.

**6. Special Meetings**

Either the Chairman or the Secretary or any two (2) Trustees (one employer Trustee and one labor organization Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting at least ten (10) days before the date set for the meeting, provided that ten (10) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

**7. Action Without a Formal Meeting**

The Trustees may take action without a formal meeting by means of (a) a conference telephone call, arranged by the Secretary or the administrative manager, in which all Trustees participate, (b) the presentation of a written motion or resolution sent to all Trustees by the Secretary or the administrative

8

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                     EXHIBIT 1 to COMPLAINT - 19

manager via letter, facsimile transmission and/or e-mail and the subsequent obtaining of Trustee votes on the motion or resolution in telephone calls placed to each Trustee by the Secretary or the administrative manager, or (c) the presentation of a written motion or resolution sent to all Trustees by the Secretary or the administrative manager via letter, facsimile transmission and/or e-mail and the subsequent obtaining of Trustee votes on the motion or resolution via letter, facsimile transmission and/or e-mail sent by each Trustee to the Secretary or the administrative manager. The unit method of voting provided for in Article IV, Section 1, will also apply to any action taken under this Section.

Any such action shall be reported in the minutes of the next formal meeting.

8.  **Arbitration of Deadlocked Issues**
In the event the employer Trustees and labor organization Trustees should deadlock on any matter submitted for their concurrence, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association. A deadlock shall be deemed to occur when there is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute. As part of his award, the arbitrator shall state his determination as to the exact issue.

The expenses of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney and witness fees of the parties, shall be chargeable to the Trust Fund.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby. The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

9.  **Election of Officers**
The Trustees shall elect a Chairman, Vice Chairman, Secretary, and Assistant Secretary. Two of these officers shall be employer Trustees and two shall be labor organization Trustees. When the Chairman is an employer Trustee, the Vice-Chairman shall also be an employer Trustee; when the Secretary is a labor organization Trustee, the Assistant Secretary shall also be a labor organization Trustee, or vice versa.

The Officers shall each hold office indefinitely, provided that when a particular Chairman, Vice-Chairman, Secretary and Assistant Secretary have held office for two (2) years, or at any time thereafter, the employer Trustees or

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.          EXHIBIT 1 to COMPLAINT - 20

the labor organization Trustees may obtain, on their request, a rotation of offices or a new election, or both.

An Officer may resign his office at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation addressed to the remaining Trustees and mailed to the administrative manager. In case of the resignation, death, incapacity or termination of appointment of either the Chairman or the Secretary, there shall be a new election of all offices. In case of the resignation, death, incapacity or termination of appointment of either the Vice-Chairman or the Assistant Secretary, there shall be a new election of that office only.

## 10. Duties of Officers

The Chairman shall chair the meetings of the Trustees, shall appoint all committees, and shall carry out such other duties as the Trustees may assign to him. The Vice Chairman in the absence of the Chairman, shall act in place of the Chairman and perform the Chairman's duties.

The Secretary shall advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the administrative manager or to other of the professional or non-professional help retained by the Trustees. The Assistant Secretary, in the absence of the Secretary, shall act in place of the Secretary and perform the Secretary's duties.

## 11. Authorized Signatures

The Chairman or the Vice-Chairman and the Secretary or the Assistant Secretary shall sign all negotiable instruments, certificates, contracts, government reports, and other legal documents on behalf of the Trust Fund, provided that the authority for signing negotiable instruments may be delegated to the Corporate Co-Trustee or the administrative manager. All persons doing business with the Trust Fund may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficiaries, the signatures of the authorized signers may be affixed thereto by a facsimile signature device or delegated to the administrative manager, under safeguards determined by the Trustees.

## 12. Compensation and Expenses

No Trustee may receive any compensation from the Trust Fund for services as a Trustee except as may be allowed under the Employee Retirement Income Security Act of 1974, and as may be authorized by the Trustees.

Each Trustee may be reimbursed out of the Trust Fund for all expenses properly and actually incurred by him in the administration of the Trust Fund.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 21

The Trustees shall establish the conditions for the payment of compensation (if any) and for the reimbursement of expenses.

### 13. Benefits to Trustees Not Prohibited

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits under the terms of the Benefit Plan, if he is otherwise eligible for the same as a participating employee or as a beneficiary of a participating employee.

# ARTICLE V
## Participation

### 1. Bargaining Units Entitled to Participate

As of the effective date of this revised and restated Trust Agreement, certain labor organizations have entered into collective bargaining agreements with employers, and employer associations, in the Southern California Lumber Industry, requiring contributions to the Trust Fund. The employees in the bargaining units covered by such agreements and the employees in the bargaining units which such labor organizations (or their successors) create in the future, shall be allowed to participate in the Trust Fund.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the labor organization and the employer fail to provide the Trustees with a copy of their collective bargaining agreement; (b) the language of the contribution provisions in the collective bargaining agreement does not meet the requirements established by the Trustees; (c) the negotiated contribution rate is less than the minimum contribution rate fixed by the Trustees, as provided for in Article IX, Section 2; or (d) there exist other facts and circumstances that, in the Trustees' discretion, justify a declination or termination of participation.

### 2. Other Bargaining Units

The Trustees shall have the authority to permit labor organizations (other than those specified above) and employers and employer associations with whom such labor organizations bargain, and the employees in the bargaining units covered by such agreements, to participate in the Trust Fund.

The participation of such bargaining units shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

### 3. Staff Employees of Participating Labor Organizations

The Trustees shall have the authority to enter into special agreements directly with participating labor organizations by the terms of which such a labor organization agrees to make contributions to the Trust Fund so that the

11

employees of the labor organization can be covered by the Benefit Plan provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

### 4. Staff Employees of Participating Employer Associations

The Trustees shall have the authority to enter into special agreements directly with the participating employer associations (if any) by the terms of which such an employer association agrees to make contributions to the Trust Fund so that the employees of the employer association can be covered by the Benefit Plan provided through the Trust Fund.

The acceptance of such special agreements shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

### 5. Trust Fund Employees

The Trustees shall have the authority to provide the employees of the Trust Fund (if any), with the Benefit Plan provided through the Trust Fund. The cost of such coverage may be chargeable to the Trust Fund.

Such coverage shall be entirely discretionary with the Trustees and shall be subject to whatever terms and conditions they may impose.

### 6. Unauthorized Participation

The only individuals who shall be entitled to participate in and receive benefits from the Trust Fund shall be those employees who are within the bargaining units described in Sections 1 and 2, or who are within the groups described in Sections 3, 4, and 5 above. It is expected that participating employers will submit contributions only on behalf of such employees. The receipt by the Trust Fund of contributions which may be submitted on behalf of individuals who are not eligible to participate shall not estop the Trustees from declining or terminating the participation of such individuals, nor shall It constitute a waiver of any of the provisions of this Article or of the Benefit Plan.

## ARTICLE VI
## Trustee Responsibilities

### 1. General Duty — Receipt of Contributions and Administration of Benefit Plan

It shall be the general duty of the Trustees to receive the contributions from participating employers and any other income or assets that they may receive and, with such, to administer the Benefit Plan for the participating employees and

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 23

their beneficiaries.

Additionally the Trustees shall have the specific duties set forth in this Trust Agreement and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2.    **Compliance with the Internal Revenue Code**
The Trustees shall administer the Trust Fund and the Benefit Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are deductible from the taxable income of the employer, employer contributions are not includible in the taxable income of a participating employee or beneficiary (until benefits are actually received), and the Trust Fund remains tax exempt.

3.    **Funding Standards**
The Trustees, with the assistance of their enrolled actuary, shall establish and maintain one or more funding standard accounts, as required by Section 304(b)(1) of the Employee Retirement Income Security Act of 1974, for the purpose of determining that the Benefit Plan remains actuarially sound according to the funding standards imposed by such Act. The funding standard account shall be reviewed by the Trustees at least once each year and on occasions when the Trustees are considering amendments to the benefit plan which involve an actuarial cost.

The Trustees shall administer the Trust Fund and the Benefit Plan so that to the extent such is reasonably within their control, the Benefit Plan does not accrue an uncorrected "accumulated funding deficiency," as defined in Section 304(a)(1) and (2) of the Employer Retirement Income Security Act of 1974. If it should be determined that an "accumulated funding deficiency" has accrued or will accrue, the Trustees shall take remedial action to correct such deficiency, which action may include a request of participating employers, employer associations, and labor organizations for a negotiated adjustment in the amount of contributions, or the amendment of the Benefit Plan to adjust the level of benefits, or both, subject to the requirements of ERISA Section 305.

4.    **Basis of Payments to and from Trust Fund**
The basis on which contributions of participating employers are made shall be as specified in the underlying collective bargaining agreement or special agreement subject to Article IX, Section 2. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Benefit Plan.

5.    **Application of Trust Fund Assets**
As required by Section 403(c)(1) of the Employee Retirement Income Security Act of 1974, the assets of the Trust Fund shall never inure to the benefit of any participating employer and shall be held for the exclusive purpose of providing benefits to participating employees and their beneficiaries and

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                    EXHIBIT 1 to COMPLAINT - 24

defraying reasonable expenses of administering the Benefit Plan. This provision does not prevent a refund of contributions erroneously paid to the Trust Fund, as allowed by ERISA 403(c)(2).

6.    **Fiduciary Standards**

As required by Section 404(a)(1)(A) and (B) of the Employee Retirement Income Security Act of 1974, the Trustees shall discharge their duties and administer the Trust Fund assets solely in the interest of the participating employees and their beneficiaries and for the exclusive purposes of (a) providing benefits to participating employees and their beneficiaries and (b) defraying reasonable expenses of benefit plan administration.

In carrying out their duties, the Trustees shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

7.    **Deposits**

The contributions, or any other monies which the Trustees may receive, shall be deposited with the Corporate Co-Trustee, pending the allocation of such monies for the payment of current benefits and expenses, or for investment.

8.    **Investments**

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities i.e. common stocks, preferred stocks and bonds (foreign or domestic), mortgages, debentures, certificates of deposit, bankers acceptances, equipment trust certificates, investment trust certificates, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent, provided that in the making of investments, the Trustees shall diversify such investments as required by Section 404(a)(1)(C) of the Employee Retirement Income Security Act of 1974 so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they may deem necessary in the administration of the Trust Fund and the Benefit Plan.

The Trustees in their discretion may sell, mortgage, pledge, lease or otherwise dispose of any asset, vote upon any stocks, bonds or other securities of any corporation or other issue at any time held in the Fund, or otherwise consent to or request any action on the part of such corporation or other issue, give general or specific proxies or powers of attorney, with or without power of

14

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                EXHIBIT 1 to COMPLAINT - 25

substitution, and participate in reorganizations, recapitalizations, consolidations, mergers and similar transactions with respect to such securities; deposit such stocks or other securities in any voting trust, with any protective or like committee, with a trustee or with depositories designated thereby; exercise any subscription rights and conversion privileges; and generally exercise any of the powers of an owner with respect to stocks or other securities or property comprising the Fund to the extent the responsibility for such an action has not been delegated to an investment manager.

9.   **Specifically Permitted Investments**
    The monies of the Trust Fund may be invested in (a) a common or collective trust fund, or pooled investment fund, maintained by a bank or trust company supervised by the United States or a state, or (b) in a pooled investment fund of an insurance company, even though such bank, trust company, or insurance company is a party-in-interest as that term is designated in Section 3(14) of the Employee Retirement Income Security Act of 1974, provided that the bank, trust company, or insurance company receives not more than reasonable compensation for managing such an investment.

    The monies of the Trust Fund may also be invested in a common, collective or commingled group trust fund exempt from taxation under the Internal Revenue Code subject to the management and control of an investment manager who is designated by the Trustees.   Such trusts, and any of the accompanying documents, shall be deemed adopted as part of this Trust Agreement to the extent that assets of this Trust Fund are invested in one of these group trust funds.

    To the extent permitted by law, the monies of the Trust Fund may also be invested in mutual funds, subject to the investment criteria set out in Section 8 above.

    The Corporate Co-Trustee is authorized to settle securities trades (if any) through a securities depository which utilizes an institutional delivery system. The Corporate Co-Trustee may defer or receive securities in accordance with appropriate trade reports or statements, provided by the depository.

10.   **Title to Investments and Other Assets**
    Title to all investments or other assets of the Trust Fund shall be maintained in the name of the Trust Fund, provided that for convenience in transferring stocks, bonds, or other negotiable securities, title to such securities may be held in the name of the Trust Fund's Corporate Co-Trustee, or of its nominee.

11.   **Fidelity Bond**
    The Trustees shall procure a fidelity bond in the amount required by Section 412(a) of the Employee Retirement Income Security Act of 1974 covering each Trustee or other person who receives, handles, disburses, or otherwise exercises

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 26

custody or control of any of the funds or other property of the Trust Fund. The cost of such bond shall be chargeable to the Trust Fund, provided that, if such bond covers persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

## 12.  Records

The Trustees shall maintain all hard copy or electronic records of their administration of the Trust Fund, including records of all receipts and disbursements, all investments purchased or sold, the texts of all benefit plans all employee eligibility listings, all minutes of Trustee meetings, and all correspondence. No such record shall be destroyed except upon the specific action of the Trustees and destruction shall not be directed until a period of eight (8) years has elapsed from the date the record was created, provided that employer contribution reports and records relating to pension eligibility credits of participating employees (or microfilm copies thereof) shall be retained indefinitely.

## 13.  Annual Audit

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an independent qualified public accountant and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of the Employee Retirement Income Security Act of 1974. The cost of such examination shall be chargeable to the Trust Fund.

A statement of the results of each such examination shall be submitted to the Trustees for their review and, further shall be made part of the Trust Fund's annual report.

## 14.  Annual Actuarial Statement

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an enrolled actuary, as that term is defined in Section 103(a)(4)(C) of the Employee Retirement Income Security Act of 1974, and shall authorize such actuary to prepare an actuarial statement as to the Benefit Plan, as required by Section 103(d) of such Act. The cost of such statement shall be chargeable to the Trust Fund.

The annual actuarial statement shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

The enrolled actuary shall also be authorized to conduct an annual actuarial valuation as required by Section 103(d) of such Act.

## 15.  Summary Plan Description

The Trustees shall furnish to the Department of Labor, upon request, a

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 27

summary plan description and any modifications or changes in the information contained in such description, as required by Section 104(a)(6) of the Employee Retirement Income Security Act of 1974.

The Trustees shall also furnish to participating employees and to each beneficiary receiving benefits copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(1) of such Act.

## 16.  Annual Report

The Trustees shall prepare and file with the Department of Labor an annual report as required by Sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 as amended.  The Trustees shall also furnish a report to participating employers and the participating labor organization within 30 days after the due date for filing of the annual report that contains the summary plan information set forth under Section 104(d) of such Act.  In no case shall a participating employer or participating labor organization be entitled to receive more than one copy of any such document described in Section 104(d) of the Act during any one 12-month period.  Additionally, the Trustees may impose a reasonable charge to cover copying, mailing, and other costs of furnishing copies of the required information.

## 17.  Statements of Accrued Pension Benefits

As required by Section 105(a)(1)(B) of the Employee Retirement Income Security Act of 1974, the Trustees shall furnish a pension benefit statement at least every 3 years to each participating employee with a nonforfeitable accrued benefit and who is employed by a participating employer at the time the statement is to be furnished, and to a participating employee or beneficiary upon written request.  The pension benefit statement shall indicate, on the basis of the latest information available, (a) the total benefits accrued and (b) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.  Such statements may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee or beneficiary.  Alternatively, the Trustees may comply with the requirements of Section 105(a)(1)(B) of such Act by providing at least once a year to participating employees notice of the availability of the pension benefit statement and the ways in which the participating employee may obtain such statement.  Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee.  In no case shall a participating employee or beneficiary be entitled to more than one pension benefit statement in any 12-month period.

In addition, the Trustees shall furnish to each participating employee who during the Plan Year separates from service covered by the Benefit Plan, who is entitled to a deferred vested benefit under the Benefit Plan as of the end of such

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 28

Plan Year, and with respect to whom retirement benefits were not paid under the Benefit Plan during such Plan Year, a statement describing the nature, amount and form of the deferred vested benefit to which such participating employee is entitled. Such statement shall also include a notice to the participating employee of any benefits which are forfeitable if the participant dies before a certain date. The Trustees shall also file an annual registration statement with the Internal Revenue Service concerning participating employees to whom such statements have been issued, as required by Section 6057 of the Internal Revenue Code.

## 18.  Pension Funding Notice

The Trustees shall provide an annual pension funding notice to the Pension Benefit Guaranty Corporation, to each participating employee and beneficiary, to each participating labor organization, and to each participating employer. The notice shall contain the specific information required for multiemployer plans as set forth under Section 101(f)(2) of the Employee Retirement Income Security Act of 1974 and shall be provided to the applicable parties not later than 120 days after the end of the Plan Year to which the notice relates. Such notice may be provided in written, electronic, or other appropriate form to the extent such form is reasonably accessible to persons to whom the notice is required to be provided.

## 19.  Income Tax Withholding and Reporting

The Trustees shall annually provide each retired employee or beneficiary receiving benefits with notice of the right to elect against withholding of income tax from his pension benefits, and the right to revoke such election, as required by Section 3405 of the Internal Revenue Code.

The Trustees shall also furnish to each retired employee or beneficiary receiving benefits an annual statement of the benefits paid to him, as required by Section 6051(a) of such Code.

## 20.  Documents to be Examined or Furnished

The Trustees shall make copies of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the Benefit Plan is established or operated available for examination by participating employees or their beneficiaries in the Trust Fund office, as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974. This provision shall also apply to participating employers and labor organizations.

The Trustees shall, upon written request by a participating employee or his beneficiary furnish to the participating employee or beneficiary a copy of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) any terminal report, (e) the applicable collective bargaining agreement, and (f) any other contracts or instruments under which the Benefit

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 29

Plan is established or operated, as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of the request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor. This provision shall also apply to participating employers and labor organizations.

The Trustees shall also, upon written request by a participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of a) any periodic actuarial report (including any sensitivity testing received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, b) a copy of any quarterly, semi-annual or other financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, and c) any application filed with the Secretary of the Treasury requesting an extension under Section 304 of the Act or Section 431(d) of the Internal Revenue Code of 1986, as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) with regard to individually identifiable information and proprietary information. Such copies shall be furnished within 30 days of the request but only one copy of any report or application may be received during one 12 month period. The Trustees may impose a reasonable charge to cover copying, mailing and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor. This provision also applies to the participating employers and labor organizations.

**21.   Procedure for Establishing Funding Policy**
The Trustees shall meet periodically with such Trust Fund advisers as may be appropriate, for the purpose of anticipating the short run and long run financial needs of the Trust Fund. Thereupon, the Trustees shall adopt an appropriate funding policy and method for the Trust Fund. The funding policy and method shall be considered by the Trustees in the management of Trust Fund investments. In the event the management of Trust Fund investments has been delegated to an investment manager, the funding policy and method shall be considered by such manager.

**22.   Payment of Plan Termination Insurance Premiums**
The Trustees shall pay to the Pension Benefit Guaranty Corporation the plan termination insurance premiums imposed by the Corporation with respect to the Benefit Plan, when such premiums are due, as required by Section 4006(a) of the Employee Retirement Income Security Act of 1974. Such premiums shall be chargeable to the Trust Fund.

Consistent with regulations issued by the Corporation, the Trustees shall have the authority to adopt a definition of the term "plan participant" and to compute and pay premiums on the basis of that definition.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 30

### 23.   Procedure for Review of Denied Benefit Claims

The Trustees shall establish procedures, which shall be referenced in the Benefit Plan, whereby participating employees or their beneficiaries whose claims for benefits are denied are notified, in writing, of the reasons for such denial, including specific references to Plan provisions upon which the denial is based, a description of any additional information which is necessary to perfect the claim and why the information is necessary and which afford such a participating employee or beneficiary a reasonable opportunity for a full and fair review, as required by Section 503 of the Employee Retirement Income Security Act of 1974. Such procedures shall include the right to obtain a hearing before the Trustees and the further right to appeal the Trustees decision to final and binding arbitration.

# ARTICLE VII
## Allocation or Delegation of Trustee Responsibilities

### 1.   Allocation of Responsibilities to Committees

The Trustees may allocate to one or more committees of Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified investment manager); (b) the responsibility for reviewing and determining benefit claims of participating employees and their beneficiaries; (c) the responsibility for conducting hearings and issuing determinations, as provided for in the Benefit Plan; (d) the responsibility for resolving questions or problems that may be encountered in connection with payroll auditing activities; (e) the responsibility for resolving questions or problems that may be encountered in connection with the collection of delinquent employer accounts; (f) the responsibility for resolving questions or problems that may be encountered in connection with the day-to-day work of the administrative manager; (g) the responsibility for reviewing the performance of the qualified investment manager (if any), and of the other professional persons retained by the Trustees; and (h) any other responsibility involving this Trust Fund or the Benefit Plan.

In the event the Trustees elect to allocate any of the stated responsibilities they shall do so by the adoption of a motion or resolution calling for the appointment of a committee of Trustees (consisting of equal numbers of employer Trustees and labor organization Trustees) and specifying the particular responsibility that is being allocated. With respect to the responsibility that is allocated, the committee shall have all the powers of the full Board of Trustees. Any action to be taken by the committee shall be determined according to the voting formula contained in Article IV, Section 1 hereof. If the committee members deadlock on any matter submitted for their concurrence, such matter shall be referred to the full Board of Trustees for review and action.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 31

2.   **Delegation of Investment Responsibilities**

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, i.e. (a) an investment adviser registered as such under the Investment Advisers Act of 1940, (b) a bank as defined in that Act, or (c) an insurance company qualified to manage, acquire, or dispose of employee benefit plan assets under the law of more than one state.

In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager. The delegation shall be effective when the investment manager accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund, unless a mutual fund is chosen as the vehicle for the investment.

3.   **Delegation of Other Responsibilities**

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust Fund or the Benefit Plan (except investment responsibilities) to their administrative manager or to any other person or entity whom they may designate for such purpose. In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person or entity. The delegation shall be effective when the designated person or entity accepts the delegation. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person or entity shall also acknowledge in writing his/her status as a fiduciary with respect to the Trust Fund.

4.   **Review of Performance**

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons or entities to whom such responsibilities have been delegated.

# ARTICLE VIII
## Trustee Powers

1.   **General Powers**

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority to control and administer the Trust Fund and the Benefit Plan.

The authority of the Trustees not only encompasses the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general powers to do all things and take all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purpose of

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 32

this Trust Agreement. The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations. Unless otherwise stated in this Trust Agreement, the Trustees will serve as fiduciaries in the creation, the administration and design of the Benefit Plan hereunder and in the implementation of any action resulting from these functions or in the exercise of any other general or specific power set out in this Trust Agreement.

**2.   Specific Powers Discretionary**
The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

**3.   Administration of Employee Benefit Plan**
The Trustees shall have the authority to administer the Southern California Lumber Industry Retirement Plan as such Benefit Plan exists on the effective date of this revised and restated Trust Agreement.

The Trustees shall have the authority to make future amendments to such Benefit Plan, including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they may determine. Amendments may be made on a prospective or retroactive basis to the extent permitted by law.

**4.   Additional Benefit Plans**
The Trustees shall have the authority to create and administer additional employee pension benefit plans as may be lawful under Section 302(c) of the Labor Management Relations Act of 1947 and under Section 3(2) of the Employee Retirement Income Security Act of 1974. Upon the establishment of one or more additional employee pension benefit plans the Trustees shall have the authority, in their discretion, to allocate the employer contributions between the Benefit Plan described in Article VIII, Section 3 and such additional plan(s) and to adjust such allocation, from time to time, as the Trustees deem appropriate.

The Trustees shall have the authority to make future amendments to such benefit plan(s), including amendments that expand, restrict, or terminate all or part of the rules relating to eligibility for benefits, or to the amount and nature of such benefits, as they may determine. Amendments may be made on a prospective or retroactive basis to the extent permitted by law.

**5.   Means of Providing Benefits**
The Trustees shall have the authority to provide the benefits, in whole or in part, directly from the Trust Fund, or may contract with an insurance carrier, or other entity, to underwrite or provide such benefits.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 33

6. **Facility of Payment**

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent.

7. **Administrative Manager**

The Trustees shall have the authority to retain or employ, at the expense of the Trust Fund, an administrative manager to assist the Trustees in the day-to-day administration of the Trust Fund and the Benefit Plan subject to the control and direction and authority of the Board of Trustees. Such assistance may include the receipt and recording of contributions, the processing of delinquent accounts, the preparation of employee eligibility listings, the processing of benefit applications, the payment of benefits, the maintenance of financial records, and the handling of routine communications. The Trustees shall periodically review the performance of the administrative manager.

8. **Corporate Co-Trustee**

The Trustees shall continue to retain, at the expense of the Trust Fund, Union Bank or other corporate banking institution as the Trust Fund's Corporate Co-Trustee.  The responsibilities of the Corporate Co-Trustee shall be spelled out in a Corporate Co-Trustee agreement between the banking institution and the Trustees and shall include but not be limited to (1) the acceptance and deposit of the contributions from participating employers, (b) the payment of all administrative expenses, including the fees of the administrative manager, the fees of other professional or non-professional help, and the out-of-pocket expenses of the Trustees, (c) the providing of custodial services for all Trust Fund assets, and (d) the management of certain short-term investments.

The Trustees shall periodically review the performance of the Corporate Co-Trustee.

9. **Other Professional and Non-Professional Help**

The Trustees shall have the authority to retain or employ, at the expense of the Trust Fund, one or more accountants, actuaries, attorneys, benefit plan consultants, investment managers, investment performance analysts, payroll auditors, and other professional or non-professional help, as they may deem necessary in the administration of the Trust Fund and the Benefit Plan.

The Trustees shall periodically review the performance of their professional help and non-professional help.

10. **Obtaining of Necessary Premises, Equipment, and Supplies**

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust

23

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 34

Fund and the Benefit Plan.

### 11. Insurance

The Trustees shall have the authority to purchase policies of insurance (liability, property damage, casualty, and errors and omissions) to protect the Trust Fund and to protect themselves and their employees (if any) with respect to their activities on behalf of the Trust Fund as they may deem necessary. The cost of such insurance policies shall be chargeable to the Trust Fund, provided that, if such insurance policies cover persons other than the Trustees or their employees (if any), and if there is an additional premium for the coverage for such other persons, the additional premium shall be chargeable to such other persons.

Any policy of errors and omissions insurance which covers the Trustees individually shall contain a recourse clause as required by Section 410(b)(1) of the Employee Retirement Income Security Act of 1974, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf), from purchasing for the Trustee a waiver of the recourse clause or a separate policy insuring against such recourse.

### 12. Borrowing Money

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary in the administration of the Trust Fund and the Benefit Plan.

### 13. Reserve Funds

The Trustees shall have the authority to maintain reasonable reserve funds for future contingencies as they may deem necessary in the administration of the Trust Fund and the Benefit Plan.

### 14. Payment of Taxes

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, that may be lawfully levied or assessed against the Trust Fund.

### 15. Refunds of Contributions Erroneously Paid

The Trustees shall have the authority to refund to a participating employer contributions erroneously paid by such employer as allowable under Section 403(c) of the Employee Retirement Income Security Act of 1974 and provided that, in the event the Trustees allow a refund, any investment gains or interest attributable to the mistaken contributions shall not be paid to the employer and any attributable losses shall be deducted from the refunded contributions. All requests for refunds or credits must be in writing and directed to the administrative manager.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 35

16. **Prosecution of Legal Actions or Claims**

The Trustees shall have the authority to originate and maintain any legal actions or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary in the administration of the Trust Fund and the Benefit Plan. All such actions and claims shall be prosecuted in the name of the Trust Fund or in the name of an assignee.

17. **Defense of Legal Actions or Claims**

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings initiated against the Trust Fund or against one or more of the Trustees, former Trustees, administrative manager, or against one or more of the employees of the Trust Fund (if any) that relate to the administration of the Trust Fund or the Benefit Plan. Except as stated below, the defense of such actions, claims and proceedings shall be at the expense of the Trust Fund.

If the final court decree establishes personal liability on the part of the specified Trustees, administrative manager, or employees (if any) for breach of their fiduciary responsibilities, as permitted by Section 409(a) of the Employee Retirement Income Security Act of 1974, and orders that the specified persons are to bear the expenses of their own defense, their attorney fees shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund for their pro-rata share of such fees and costs.

18. **Compromise of Legal Actions or Claims**

The Trustees shall have the authority to compromise, settle, or release all legal actions or claims involving potential legal actions, in favor of or against the Trust Fund, on such terms and conditions as they may determine.

19. **Penalties for False or Withheld Information**

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees or beneficiaries who (a) falsify any information requested of them in the administration of the Trust Fund and the Benefit Plan, or (b) fail to provide requested information within a reasonable time.

20. **Correction of Errors**

It is recognized and acknowledged by all parties that the Trustees will provide eligibility credits or benefits to participating employees and their beneficiaries based on Trust Fund records. It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more (or less) than the hours of contributions required to be reported, (d) delinquent employer reports, (e) employees or beneficiaries submitting incorrect

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 36

or false benefit applications, (f) recording or computation errors by the administrative manager, (g) computer errors, or (h) other similar circumstances. The Trustees shall have the authority to correct the Trust Fund records whenever errors are discovered and to terminate participation, adjust eligibility credits or benefits, or seek the recovery of benefit overpayments, as they may determine.

## 21. Participation in Non-Profit Educational Organizations

The Trustees shall have the authority to participate in nonprofit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organization, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

## 22. Reciprocity

The Trustees shall have the authority to enter into reciprocal agreements with other employee pension benefit trust funds for the exchange of eligibility credits or monies, or for the payment of pro-rata benefits, in order to protect employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund, and vice-versa.

## 23. Coordinated Administration

The Trustees shall have the authority to coordinate the administration of the Trust Fund and of the Benefit Plan with the administration of other benefit trust funds and benefit plans, to such extent as they may determine.

## 24. Mergers

It is recognized that at some time or times in the future, the Trustees may deem it in the best interest of the Trust Fund and of the participating employers, employer associations, labor organizations, and employees to accept the merger of another employee pension benefit trust fund into the Trust Fund, or to merge the Trust Fund into another benefit trust fund. In the event that another employee pension benefit trust fund is to be merged into the Trust Fund, the Trustees shall have the authority to negotiate and consummate an appropriate merger agreement, and pursuant thereto, to accept a transfer of the remaining monies, assets, and liabilities from the other trust fund.

In the event the Trust Fund is to be merged into another employee pension benefit trust fund, the Trustees shall have the authority to negotiate and consummate an appropriate merger agreement, and pursuant thereto, to

EXHIBIT 1 to COMPLAINT - 37

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

terminate the Trust Fund and to transfer the remaining monies, assets, and liabilities to the other trust fund.

To the extent required by regulations of the Pension Benefit Guaranty Corporation, the Fund shall not be merged or consolidated with, nor its assets or liabilities transferred to, any other plan or trust unless each participant in the Plan would (if the Plan terminated) be entitled to receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

## 25. Eligible Rollover Plan Distributions

The Trustees shall have the authority to administer direct trustee-to-trustee transfers of eligible rollover plan distributions to financial institutions selected by the participant (or spouse or former spouse). The Trustees shall also have the authority to implement any necessary procedures and policies which are required by the Unemployment Compensation Amendments Act of 1992 and any regulations issued relating thereto in order to comply with the Act and regulations.

## 26. Interpretation and Application of Documents

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Benefit Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments, or writings that they may have adopted or entered into.

## 27. Adoption and Implementation of a Funding Improvement Plan and Rehabilitation Plan

The Trustees shall have the authority to adopt and implement a funding improvement plan and a rehabilitation plan in accordance with the provisions of ERISA Section 305, should the enrolled actuary certify that the Benefit Plan is in endangered or critical status. In this regard, the Trustees shall provide the participating employers and participating labor organizations with a schedule or schedules showing revised benefit and/or contribution structures which, if adopted, might reasonably be expected to allow the Benefit Plan to achieve applicable funding benchmarks (if the Benefit Plan is in endangered status) or to allow the Benefit Plan to emerge from critical status.

If upon expiration of a collective bargaining agreement in effect at the time the Benefit Plan entered endangered or critical status, a participating employer and a participating labor organization are unable to agree on a new contract that includes benefit and/or contribution schedules necessary to allow the Benefit Plan to meet the applicable benchmarks, if the Benefit Plan is in endangered status, or to allow the Benefit Plan to emerge from critical status, the Trustees shall have the authority to implement the default schedule as described under ERISA Section 305(c)(1)(B)(i)(I) and Section 305(e)(1)(B)(ii).

27

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 38

Nothing in this section should be construed as to limit the Trustees' authority and powers under the Trust Agreement or applicable provisions of the Employee Retirement Income Security Act of 1974.

# ARTICLE IX
## Contributions and Collections

1. **Contribution Reporting Forms**

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2. **Contribution Amount for Pension Benefits**

Each employer who is obligated to make monthly contributions to the Benefit Plan, must do so in an amount required by the underlying collective bargaining agreement or special agreement provided that such amount meets or exceeds the minimum contribution fixed from time to time by the Trustees.

3. **Method of Computing Contributions**

Monthly contributions shall be made to the Southern California Lumber Industry Retirement Fund by transmittal to the custodian bank for each employee working or paid for sixty-four (64), seventy (70), eighty (80) or one hundred (100) or more hours per month or according to such other formula if provided in the applicable collective bargaining agreement and approved by the Trustees in advance of the effective date of the collective bargaining agreement. Hours worked include straight time and overtime hours. Hours paid for generally include vacation, holiday and sick leave whether specifically included in the collective bargaining agreement or not.

Those agreements providing weekly contributions must require a weekly contribution which is no less than the equivalent of the required monthly contributions divided by 4-1/3; those agreements providing hourly contributions must require no less than an hourly contribution which is the equivalent of the required monthly contribution divided by 173 hours. Also, all contributions paid to the Fund for an employee for a given month will be accumulated and benefits accrued when the sums so accumulated equal the required monthly rate of contribution.

During each month each participating employer who employs carpenters or installers who may work part of their time on the premises or in the shop or yard of the employer and may also work for the employer away from such shop, or yard or premises of the employer but on the job site where certain installations are being made by such employee for the employer, the employer shall contribute to this Benefit Plan at an hourly rate up to a maximum of not to exceed 173 hours in any one month for all hours such employees work or are paid

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 39

(including vacation and holiday time) in the shop, yard or premises of the employer provided such employees are covered by a collective bargaining agreement and the employer is a signatory to that agreement.

**4.   Contribution Due Date**

All contributions shall be made by the employers or their representatives only and shall be due by the 1st but no later than the 15th of each calendar month based on hours worked or paid for in the previous month.

**5.   Delinquent Contributions**

A participating employer shall be considered to be delinquent in the payment of contributions if he (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, (b) fails to submit contributions on behalf of all the employees for whom contributions are required under the underlying collective bargaining agreement or special agreement, (c) fails to compute properly the contributions according to the required contribution formula specified in the underlying collective bargaining agreement or special agreement or as required by this Trust Agreement, or (d) fails to submit the required contributions when his collective bargaining agreement has expired but he has, by law, a continuing obligation, to bargain with a participating labor organization.

The Trustees shall undertake reasonable efforts, at the expense of the Trust Fund, to collect known delinquent contributions and related claims.

**6.   Audit of Employer Books and Records**

The Trustees shall have the authority to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or an ad hoc program.

Whenever a payroll audit is authorized, the participating employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(1) and (2) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports that reflect the hours and wages, or other compensation, of the employees or from which such can be verified in hard copy and/or electronic format.

In the event the payroll audit discloses that the participating employer has not paid contributions as required by the underlying collective bargaining agreement or special agreement or as required by this Trust Agreement, and the

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 40

amount owing for these contributions exceeds 10% of the amount that should have been paid, the employer shall also be liable for the costs of the audit. In addition, the employer shall be liable for liquidated damages and interest as provided below in Article IX, Section 8. The Trustees shall have the authority, however, to waive all or part of such costs for good cause shown.

7.    **Employer Liability**
      A participating employer shall be personally and directly liable to the employee under this Agreement for any and all losses suffered by the employee who is denied benefits because of the employer's failure to make the required contributions.

8.    **Liquidated Damages, Interest, Attorneys Fees and Costs**
      It is recognized and acknowledged by all parties, including the participating employers, that the regular, prompt and accurate payment of contributions is essential to the efficient and fair administration of this Trust Fund and its Benefit Plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the Trust Fund that would result from the failure of a participating employer to make timely payment of contributions. Therefore, if any participating employer shall be delinquent in the payment of contributions, such employer shall be liable, in addition, for liquidated damages of ten percent (10%) of the amount of the contributions if such contributions are more than ten days delinquent. In case legal action is necessary to collect the delinquent account, which results in a court judgment on such an account, the above ten percent (10%) liquidated damages shall be increased to twenty percent (20%) of contributions. In addition, if delinquent contributions plus liquidated damages are not paid in fifteen (15) days from the date of assessment, then the delinquent employer shall be assessed interest at the rate of ten percent (10%) per annum from the due date until they are paid plus attorneys fees and other collection costs. The Trustees shall have the authority, however, to waive all or part of the liquidated damages, interest, or attorneys fees and costs for good cause shown.

9.    **Assignment of Claims to Third Persons and Attorneys Fees and Costs**
      The Trustees shall also have the right to assign such claim for delinquent payments to a third person, or persons, and such assignee may in his own name bring an action at law to collect the delinquent payments. In the event such action is brought by the administrative manager or by his assignee, it is agreed that such defaulting employer shall also be liable not only for the principal sum then owing but all other collection costs, interest, attorneys fees, and damages provided for in Article IX, Section 8 above. The Trustees shall have the authority however, to waive all such damages, interest, attorneys fees and costs for good cause shown.

10.   **Venue of Collection Actions**
      In the event a collection suit is initiated, venue of such suit may be laid in a court of competent jurisdiction (federal or state) in the county, district, or borough

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 41

in which the Trust Fund has an office, at the option of the Trustees.

## 11. Protection of Employees in Cases of Delinquency

To protect participating employees and beneficiaries in situations where participating employees may be denied pension credits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend pension credits to such employees as they may determine.

The extension of pension credits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

## 12. Coordination with Provisions in Collective Bargaining Agreements

In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option may pursue the additional remedies or impose the greater charges.

The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement.

# ARTICLE X
## Employer Withdrawal Liability

## 1. Unfunded Vested Liability

The Trustees shall administer the Trust Fund and the Benefit Plan so that to the extent such is reasonably within their control, no unfunded vested liability accrues. However, in the event such a liability should accrue, the Trustees will assess such liability to all withdrawing employers according to the following sections.

## 2. Allocation of Liability

As required by the Multiemployer Pension Plan Amendments Act of 1980, in the event a participating employer should withdraw from the Trust Fund, the Board of Trustees shall (a) determine the amount of the employer's withdrawal liability (if any), (b) notify the employer of the amount of the withdrawal liability, and (c) collect the amount of withdrawal liability from the employer. In carrying out this responsibility, the Board of Trustees shall apply the terms and provisions of such Act, and any regulations issued thereunder, provided, however, that the Board of Trustees may from time to time adopt alternate methods or formulas for calculating and collecting withdrawal liability payments as permitted by the regulations.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 42

3.  **Adoption of Administrative Procedures and Rules**

The Board of Trustees shall adopt administrative procedures and rules relating to the processing of employer withdrawal situations.

4.  **Determination of Amount of Unfunded Vested Benefits Allocable to Withdrawing Employer**

The Board of Trustees shall determine the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the formula set out in Section 4211(b) "Methods for Computing Withdrawal Liability" of the Act, and any regulations issued thereunder. In making such a determination, the actuarial assumptions and methods of the Benefit Plan shall be applied, as allowable under Section 4213(a)(1) "Actuarial Assumptions, etc." of the Act.

5.  **Determination of the Sum of All Contributions Made**

In determining a withdrawing Employer's proportional share of the unamortized amount of the unfunded vested benefits, under both Section 4211(b)(2)(E) and Section 4211(b)(3) of the Act, there is reference to the use of a fraction, the numerator of which is the sum of the contributions required to be made by the withdrawing employer during the five Plan years preceding the date of the withdrawal, and the denominator of which is the sum of all contributions made by employers during the five Plan years preceding the date of withdrawal, less the contributions made during those Plan years by employers who withdrew during those Plan years.

The "sum of all contributions made" for a Plan Year means the amount of contributions actually received during the Plan Year as reflected in the Trust Fund's annual audit report for that Plan Year.

In addition, in reducing the "sum of all contributions made" base by the contributions of withdrawing employers, only the contributions of "significant withdrawn employers" shall be taken in account. A "significant withdrawn employer" shall be (a) an employer to whom the Trust Fund has sent a notice of withdrawal liability under Section 4219 "Notice Collection, etc. of Withdrawal Liability" of the Act, or (b) a withdrawn employer that in any base Plan Year (1974-1979) used to determine the denominator of a fraction contributed at least $250,000, or, if less, 1 % of all contributions made by employers for that year.

6.  **Payment of Withdrawal Liability in Monthly Installments**

As allowable under Section 4219(c)(3) of the Act, the annual withdrawal liability payments owing to this Trust Fund by a withdrawing employer shall be payable in twelve (12) equal monthly installments, due on the first (1st) day of each month, in advance.

7.  **Notice of Potential Withdrawal Liability**

As provided in Section 101(l) of the Employee Retirement Income Security Act of 1974, the Board of Trustees shall, upon written request, furnish to any

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 43

employer who has an obligation to contribute to the Fund (1) a notice of the estimated amount of what would be the employer's withdrawal liability if the employer withdrew on the last day of the plan year preceding the date of the request, and (2) an explanation of how such estimated withdrawal liability was calculated, including (a) the actuarial assumptions and methods used to determine the value of the Retirement Benefit Plan's liabilities and assets; (b) the data regarding employer contributions, unfunded vested benefits and annual changes in the Retirement Benefit Plan's vested benefits; and (c) changes in the application of any relevant limitations in the estimated withdrawal liability. Such notice shall be furnished to the requesting employer within 180 days after the request but in no case shall an employer be entitled to receive more than one such notice during any one 12-month period. The Board of Trustees shall impose a reasonable charge on each employer requesting such a notice.

8.   **Exemption from Liability**

Notwithstanding Section 2 of this Article, a participating employer who withdraws from the Trust Fund shall incur no withdrawal liability if all four of the following conditions are met: (a) the participating employer first had an obligation to contribute to the Trust Fund after September 26, 1980; (b) the participating employer had an obligation to contribute to the Trust Fund for no more than six (6) consecutive Plan Years preceding the date of withdrawal, and, for each of those six (6) or fewer Plan Years, the amount of the participating employer's obligation was less than 2% of the amount of the obligation for all participating employers combined; (c) at the end of the Plan Year preceding the Plan Year in which the participating employer first had an obligation to contribute to the Trust Fund, the assets were at least eight (8) times as great as the benefit payments made during that Plan Year; and (d) the participating employer has never avoided withdrawal liability by application of this Section 8.

# ARTICLE XI
## Limitations

1.   **Liabilities and Debts of Trust Fund**

No Trustee or any participating employer, employer association, labor organization, employee, or beneficiary shall be responsible for the liabilities or debts of the Trust Fund. However, this provision shall not relate to any liability which may be imposed on a participating employer under Section 4971 of the Internal Revenue Code, or Title IV of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980.

2.   **Personal Liabilities of Trustees**

No Trustee shall incur any personal liability in connection with the administration of the Trust Fund or the Benefit Plan, except for such liability that may be established in accordance with Section 409(a) of the Employee

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 44

Retirement Income Security Act of 1974.

Except as may be required by applicable provisions of such Act, no Trustee shall be held personally liable for any breach of fiduciary responsibilities in connection with the administration of the Trust Fund or the Benefit Plan where it is established (a) that the responsibilities at issue were lawfully allocated or delegated to other Trustees or fiduciaries, or (b) that in carrying out the responsibilities at issue the Trustee reasonably relied upon the advice given by the administrative manager or by one or more of the advisers retained by the Trustees.

No Trustee shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a Trustee or after he ceased to be a Trustee.

3.   **Judgments against Trust Fund**
Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

4.   **Participating Parties' Rights**
Except as specifically provided for in this Trust Agreement or in the Benefit Plan, no participating employer, employer association, labor organization, or employee, or any beneficiary of a participating employee shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions, or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided through the Benefit Plan, nor shall a participating employee who does not qualify for benefits, or his employer, have any claim to the contributions which may have been paid on his behalf.

No participating employee or beneficiary shall be entitled to receive any benefits from the Trust Fund except as such employee or beneficiary is eligible for under the terms of the Benefit Plan.

5.   **Cessation of Participation**
In the event a participating employer, employer association, or labor organization, or groups thereof, should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be required by law.

6.   **Protection of Trust Fund, Contributions, and Benefits**
No part of the Trust Fund (including the contributions) or the benefits

34

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 45

payable under the Benefit Plan shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void provided, that the Trustees may recognize assignment of benefits from a participating employee to an alternate payee under a Qualified Domestic Relations Order, as such term is defined under Section 206(d) of the Employee Retirement Income Security Act of 1974.

Except as may be required by law, no part of the Trust Fund (including the contributions) or the benefits payable under the Benefit Plan shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void.

7.  **Reliance upon Written Documents**
    The Trustees may act upon any written certificate, instrument, or other document submitted to them (including via facsimile transmission or electronic format) by any participating employer, labor organization, employee or beneficiary, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons, and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such document.

8.  **Agents of Trust Fund**
    The Trust Fund is an entity separate and apart from the participating employers, employer associations, and labor organizations. Accordingly, unless authorized in a motion or resolution of the Board of Trustees, no participating employer, employer association, or labor organization, nor any individual employed thereby, shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

Likewise, unless authorized in a motion or resolution of the Board of Trustees, no individual Trustee shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

## ARTICLE XII
## Miscellaneous

1.  **Trust Fund Offices**
    The Trust Fund shall maintain a principal office and sub-offices, where necessary, in such locations as the Trustees may determine.

2.  **Applicable Laws and Regulations**
    This Trust Agreement shall be interpreted, and the Trust Fund shall be

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 46

administered, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended.

References herein to particular sections of the above-mentioned statutes shall include any regulations pertinent to such sections and any subsequent amendments to such sections or regulations.

## 3. Service in More than One Fiduciary Capacity
Any Trustee or other person who is a fiduciary may serve the Trust Fund in more than one fiduciary capacity.

## 4. Notices
Any written notice permitted by this Trust Agreement shall be personally delivered to the person for whom it is intended, or sent to such person at his residence or business address for employer delivery by first class mail, facsimile transmission or e-mail.

## 5. Severability
If any provision of this Trust Agreement, or of the Benefit Plan, is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement, or of the Benefit Plan.

## 6. Titles and Words
The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe any term or provision hereof. Whenever any words are used herein in the masculine gender, they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

## 7. Information to be Furnished
Participating employers and labor organizations agree to furnish the Trustees with any information as may be required for the administration of the Trust Fund, of this Trust Agreement or the Benefit Plan.

## 8. Rights of Employees
Nothing herein contained shall be deemed to give any employee the right to be retained in the service of an employer or to interfere with the right of an employer to discharge such employee at any time, nor shall it be deemed to give an employer the right to require the employee to remain in its service, nor shall it interfere with the employee's right to terminate his service at any time.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 47

9.   **Conflict with Collective Bargaining Agreements**

If any provision of this Trust Agreement conflicts with a provision in a collective bargaining agreement obligating a participating employer to make contributions to this Trust Fund, the provision in this Trust Agreement will prevail.

10.   **Acceptance by Employer**

Each employer making contributions to this Trust Fund does hereby accept, ratify and agree to be held by and comply fully with all of the terms and provisions of this Trust Agreement and the Benefit Plan and any duly adopted amendments with the same effect as though such employer had signed an original of such agreement or amendment, and further agrees and accepts resolutions of the Board of Trustees implementing the terms thereof. No liability is assumed for the performance of any other employer.

# ARTICLE XIII
## Amendments and Termination

1.   **Amendments**

This Trust Agreement may be amended by action of the Board of Trustees except that the Trustees shall make no amendment which is in conflict with any applicable law or government regulation.

The power of the Board of Trustees to amend this Trust Agreement includes the power to make amendments which are required to protect the tax exempt status of the Benefit Plan and the deductibility of participating employer contributions as business expenses for income tax purposes.

In addition, the Board of Trustees may further amend or cancel any such amendments.

2.   **Termination**

This Trust Agreement may be terminated at any time, by action of the Trustees.

In any event, this Trust Agreement shall be automatically terminated upon the expiration of all collective bargaining agreements and special agreements requiring the payment of contributions to the Trust Fund, provided that for purposes of this provision a collective bargaining agreement or special agreement shall not be deemed to have expired in a strike or lockout situation, unless said strike or lockout continued for more than six (6) months.

3.   **Allocation Upon Termination**

Upon the termination of this Trust Agreement, the Trustees shall wind up the affairs of the Trust Fund. Where the termination occurs as a result of a merger, as authorized by Article VIII, Section 24, any and all assets remaining in

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 48

the Trust Fund, after payment of expenses, shall be transferred to the Trust Fund with which the merger is negotiated. With respect to any other termination, any and all monies remaining in the Trust Fund, after the payment of expenses, shall be allocated among the participating employees and beneficiaries, in accordance with the Internal Revenue Code and the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980.

In no event shall any of the remaining monies or assets be paid to or be recoverable by any participating employer, employer association or labor organization nor shall any of the same be used for or diverted to purposes other than for the exclusive benefit of employees and their beneficiaries.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 49

# SOUTHERN CALIFORNIA
# LUMBER INDUSTRY
# RETIREMENT FUND TRUST AGREEMENT

## ACCEPTANCE BY TRUSTEES

The undersigned Trustees hereby accept the foregoing revised and restated Trust Agreement, effective August 11, 2011, and agree to act in accordance with its terms and provisions:

**EMPLOYER TRUSTEES**

Thomas C. Heydorff

John "Bogie" Nicols

Brent K. Berglund

Wayne Noecker

**LABOR ORGANIZATION TRUSTEES**

Patrick McGinn

William K. Miller

Floyd Clay

James K. Bernsen

Fernando Rojas

EXHIBIT 1 to COMPLAINT - 50

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

ADMINISTRATIVE OFFICE
c/o Benefit Programs Administration
13191 Crossroads Parkway North, Suite 205
City of Industry, CA 91746-3434
562-463-5080

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 51

SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
(as revised and restated August 11, 2011)

This is to certify that the Board of Trustees of the Southern California Lumber Industry Retirement Fund (hereafter "Trust Fund"), at a meeting on August 9, 2012, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the Southern California Lumber Industry Retirement Fund to include participation in various alternative investments. This Amendment is effective June 1, 2012.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is amended to revise the third paragraph as follows:

\* \* \*

"9.   Specifically Permitted Investments

\* \* \*

...Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in mutual funds and certain alternative investments, (through various investment vehicles) including, but not limited to, core real estate, high yield fixed income, and risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

\* \* \*

Executed this 9th day of August 2012.

_____        _____
Chairman                                        Secretary

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 52

SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
(as revised and restated August 11, 2011)

This is to certify that the Board of Trustees of the Southern California Lumber Industry Retirement Fund ("Fund"), at a meeting on May 9, 2013, did adopt the following Amendment to Article III, "The Trustees," Section 7, "Appointment of Successor Employer Trustees," of the Trust Agreement governing the Southern California Lumber Industry Retirement Fund. This Amendment clarifies the appointment of successor employer Trustees. The Amendment is effective May 9, 2013.

Article III, "The Trustees," Section 7, "Appointment of Successor Employer Trustees," is amended to delete the first paragraph of Section 7. The revised first paragraph shall then read as follows:

* * *

"7.  Appointment of Successor Employer Trustees

In the event of the termination of appointment, resignation, death, or incapacity of an employer Trustee, a successor employer Trustee shall be provisionally appointed by majority action of the remaining employer Trustees."

* * *

Executed this 29th day of August 2013.

_____
Chairman

_____
Secretary

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 1 to COMPLAINT - 53

SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
AMENDMENT NO. 2
TO THE TRUST AGREEMENT GOVERNING
THE SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
(as revised and restated August 11, 2011)

This is to certify that the Board of Trustees of the Southern California Lumber Industry Retirement Fund ("Fund"), at a meeting on August 29, 2013, did adopt the following Amendment to Article II, "Definitions," Section 12, "Southern California Lumber Industry," of the Trust Agreement governing the Southern California Lumber Industry Retirement Fund to include the state of Nevada. This Amendment is effective August 29, 2013.

Article II, "Definitions," Section 12, "Southern California Lumber Industry," is amended to replace the first sentence with the following:

\* \* \*

"12.    Southern California Lumber Industry – the term "Southern California Lumber Industry" shall include any employer or labor organization maintaining and operating a place of business at any location in the Counties of Kern, Imperial, Inyo, Los Angeles, Mono, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, and Ventura in the State of California, and the State of Nevada in the in the lumber, cabinet, fixture, extrusion, woodworking, furniture and related industries...."

\* \* \*

Executed this 29th day of August 2013.

_____          _____
Chairman                                       Secretary

SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
AMENDMENT NO. 3
TO THE TRUST AGREEMENT GOVERNING
THE SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
(as revised and restated August 11, 2011)


This is to certify that the Board of Trustees of the Southern California Lumber Industry Retirement Fund ("Fund"), at a meeting on October 22, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," of the Trust Agreement governing the Southern California Lumber Industry Retirement Fund for compliance with the Multiemployer Pension Reform Act of 2014. This Amendment is effective January 1, 2015.

Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," is amended to delete the third paragraph in its entirety and replaced with the following:

**"20. Documents to Be Examined or Furnished**

\* \* \*

The Trustees shall also, upon written request by a participating employee or beneficiary, labor organization, or participating employer furnish to the participating employee or beneficiary, labor organization, or participating employer a copy of a) the current plan document (including any amendments thereto), b) the latest summary plan description of the plan, c) the current trust agreement (including any amendments thereto, d) the applicable collective bargaining agreement and/or participation agreement for the current Plan Year or any of the five immediately preceding Plan Years, e) the annual report for any Plan Year, f) the Trust Fund funding notice for any Plan Year, g) any periodic actuarial report (including any sensitivity testing) received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, h) any quarterly, semi-annual, or annual financial report

1

EXHIBIT 1 to COMPLAINT - 55

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, i) audited financial statements for the Trust Fund for any Plan Year, j) any application filed with the Secretary of the Treasury requesting an extension under Section 304(d) of the Act or Section 431(d) of the Internal Revenue Code of 1986 and the determination of such Secretary pursuant to such application, and k) in the case where the Trust Fund was in critical or endangered status under Section 305 of the Act for a Plan Year, the latest funding improvement or rehabilitation plan, and the contribution schedules applicable with respect to such funding improvement or rehabilitation plan (other than a contribution schedule applicable to a specific participating employer, if any), as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) of the Act with regard to individually identifiable information and proprietary information.

In accordance with Section 101(k) of the Act, such copies shall be furnished within 30 days of the request. In no case shall a participating employee or beneficiary, labor organization, or participating employer be entitled to receive more than one copy of any document in the paragraph above during any one 12-month period, or, in the case of any document described in items (e), (f), (g), (h), or (i) of the paragraph above, a copy of any document that as of the date on which the request is received by the Trust Fund, has been in the Trust Fund's possession for 6 years or more. The Trustees may impose a reasonable charge to cover copies, mailing, and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor."

* * *

Executed this 22nd day of October 2015.

_____
Chairman

_____
Secretary

2

EXHIBIT 1 to COMPLAINT - 56

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
AMENDMENT NO. 4
TO THE TRUST AGREEMENT GOVERNING
THE SOUTHERN CALIFORNIA LUMBER INDUSTRY RETIREMENT FUND
(as revised and restated August 11, 2011)

This is to certify that the Board of Trustees of the Southern California Lumber Industry Retirement Fund (hereafter "Trust Fund"), at a meeting on August 13, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the Southern California Lumber Industry Retirement Fund to include participation in private debt investments. This Amendment is effective August 13, 2015.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is amended to revise the third paragraph as follows:

* * *

"9.  Specifically Permitted Investments

* * *

...To the extent permitted by law, the monies of the Trust Fund may also be invested in mutual fund investments and certain alternative investments, (through various investment vehicles) including, but not limited to, core real estate, high yield fixed income, private debt, and risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

* * *

Executed this 22nd day of October 2015.

_____          _____
Chairman                              Secretary

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                    EXHIBIT 1 to COMPLAINT - 57

# EXHIBIT 2

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 2 to COMPLAINT - 58

**Alex Padilla**
**California Secretary of State**

 Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, May 4, 2020. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C0209404   PEERY BROS. LUMBER CO., INC.

| | |
|---|---|
| **Registration Date:** | 09/03/1946 |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Type:** | DOMESTIC STOCK |
| **Status:** | FTB SUSPENDED |
| **Agent for Service of Process:** | CELESTE DEANNE PEERY |
| | 140 N. WILLOW AVE. |
| | CITY OF INDUSTRY CA 91746 |
| **Entity Address:** | 140 N. WILLOW AVE. |
| | CITY OF INDUSTRY CA 91746 |
| **Entity Mailing Address:** | 140 N. WILLOW AVE. |
| | CITY OF INDUSTRY CA 91746 |

| Document Type ⇅ | File Date ⬇ | PDF |
|---|---|---|
| SI-COMPLETE | 09/25/2018 | |
| SI-COMPLETE | 04/26/2017 | |
| REGISTRATION | 09/03/1946 | Image unavailable. Please request paper copy. |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

| **Modify Search** | **New Search** | **Back to Search Results** |

# EXHIBIT 3

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 60

RECEIVED MAR 2 7 2018

**2017 - 2020**

**Labor Agreement**

**Between**

**Peery Bros. Lumber Company, Inc.**

**and**

**Cabinet Makers, Millmen and Industrial**

**Carpenters Local 721**

**affiliated with the**

**United Brotherhood of Carpenters and**

**Joiners of America**

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 61

# Table Of Contents

Preamble .................................................................................. 1

Section 1.  Purpose .................................................................. 1

Section 2.  Wage Scale ............................................................ 1

Section 3.  Working Hours ....................................................... 1

Section 4.  Holidays ................................................................. 2

Section 5.  Health and Welfare Contributions ........................... 2

Section 6.  Retirement Fund Contributions ............................... 4

Section 7.  Union Security ........................................................ 5

Section 8.  Vacations ............................................................... 6

Section 9.  Rights of Union Representatives ............................. 7

Section 10.  Seniority ............................................................... 7

Section 11.  Shop Steward ........................................................ 8

Section 12.  Mileage ................................................................ 8

Section 13.  Pay Period ............................................................ 8

Section 14.  Call Provisions ..................................................... 8

Section 15. No Moonlighting Clause ......................................... 8

Section 16.  Sick Leave Pay ...................................................... 9

Section 17.  Savings Clause ...................................................... 9

Section 18.  Incentive Compensation ........................................ 9

Section 19.  New Hire Program ................................................. 9

Section 20.  Training Program ................................................... 10

Section 21.  No Discrimination ................................................. 10

Section 22.  Successors and Assigns ......................................... 10

Section 23.  Grievance & Arbitration ........................................ 10

Section 24.  Management Rights ............................................... 11

Section 25.  Discharge and Discipline ....................................... 11

Section 26.  Duration of Agreement .......................................... 12

Exhibit A.  Wage Rates ............................................................ 13

Exhibit B.  Incentive Bonus Program ........................................ 14

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 62

## Preamble

This Agreement was entered into on November 1, 2017 by and between Cabinet Makers, Millmen and Industrial Carpenters Local Union 721, the Southwest Regional Council of Carpenters, and the United Brotherhood of Carpenters and Joiners of America, hereinafter referred to as the Union, and Peery Bros. Lumber Company, Inc., hereinafter referred to as the Employer and/or the Company.

## Section 1.  Purpose

The purpose of this Agreement is to develop a working relationship between the Employer and the Union in which the rights of both parties are to be mutually recognized and respected, and to maintain harmonious relations and conditions of employment between the Employer and his Employees during the life of this Agreement.

## Section 2.  Wage Scale

Exhibit A attached hereto and made a part hereof sets forth the straight time hourly scale of wages to be paid during the time shown below for the various job classifications covered by this Agreement.

It is hereby agreed that no employee shall receive a reduction in hourly wages due to the signing of this Agreement.

## Section 3. Working Hours

A.  Regular Work Time:  Eight hours shall constitute a regular workday.  Five (5) days shall constitute a regular workweek, Monday through Friday, inclusive.  The regular workday shall continue uninterrupted for eight (8) hours except for a meal period of at least one half hour between the fourth and sixth hours.

B.  Overtime Work:  The rate of wages for overtime work shall be as follows:  For the first four (4) hours after the first eight (8) hours work, and work on Saturdays for the first eight (8) hours, time and one half the regular hourly rate (excluding bonuses) shall be paid.  All overtime work hereafter and work performed on Sundays and herein listed holidays shall be paid for at the rate of double time the regularly hourly rate (except bonuses), except that such work as may be necessary in order to facilitate the emergency arrival of material may be done on Sundays at time and one half the regular hourly rate of pay for the first eight (8) hours of such work performed.  This rate shall not apply to any work other than that above mentioned.  Every man has the right to refuse to work overtime; however the time to refuse is at the time he is asked.  If an employee promises to work at some later date and time, he will be expected to do so.

Seniority by department and classification shall be the guidelines wherein overtime will be offered and/or refused as such.  If all employees refuse (or decline) overtime, the employer shall start with the lowest senior employee in the department working overtime and get the necessary help required for any overtime that must be worked by using reverse seniority techniques.  Basically, overtime shall be as evenly divided as may be possible between employees within the department working overtime.

C.  Extra Shifts:  Additional shifts will be provided as follows: The second shift shall consist of eight (8) hours' work at Twenty-Five Cents ($0.25) per hour above the hourly rate shown in Exhibit A.  The rate of pay for the third shift shall be Thirty-Five Cents ($0.35) per hour above the regular rate shown in Exhibit A.  All such additional shifts shall start within one half (½) hour of the previous shift, except that upon a mutual agreement between the Employer and the Union, a different starting time may be provided.  Such extra shifts shall be subject to all overtime provisions based on the rates given in this paragraph.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 63

Any extra shift started on a day before a holiday or on Friday shall be permitted to complete the extra shift without overtime penalty.

It is not the intention of the parties that any employee covered by this Agreement shall receive, nor any employer should pay for, overtime under any statutory law, rule, or regulation now existing or later enacted or put into effect, in addition to the overtime required and made pursuant to this Agreement.

D. Coffee Breaks: There shall be two (2) coffee breaks of ten (10) minutes duration during an eight (8) hour shift; one at or near midmorning shift and one at or near mid-afternoon shift.

### Section 4. Holidays

The number of holidays shall be eight (8) and will be as follows:

1. New Year's Day
2. Memorial Day
3. Fourth of July
4. Labor Day
5. Thanksgiving Day
6. The day after Thanksgiving Day
7. Christmas Day
8. Company designated holiday

The day following Thanksgiving Day may be substituted for another paid holiday upon proper and timely notification to and agreement with the Union, provided that a majority of the employees agree to make the switch to another day which shall be named at the time in writing between the parties. The Employer hereby agrees that he may take advantage of this clause if he gives at least 30 days notice in writing to the Union of his intention to do so, in order that the Union may have time to discuss it with the employees involved and get their views and agreement. The employees involved shall determine the application to this clause in individual plants and yards.

Those employees who have been on the payroll of the Employer for a period of sixty (60) days or more prior to any recognized holidays above enumerated shall receive eight (8) hours' pay at their current straight time rate of pay for each one of the recognized holidays if not worked. Employees must have worked a full day on their last scheduled work day prior to the holiday, and on their next scheduled work day after the holiday unless excused by the Employer or the Employer's authorized representative , which excuse will not be denied except for just cause.

For any work performed on a listed holiday, the rate of pay shall be at double the regular straight time rates plus the holiday pay.

### Section 5. Health and Welfare Contributions

A. WELFARE CONTRIBUTIONS: Beginning on the effective date of this Agreement, based on hours worked or paid for in the preceding month and continuing each month for the duration of the Agreement, or any further extension thereof, the Employer agrees to make monthly contributions as specified below to the Southern California Lumber Industry Welfare Fund's Managed Care Plan for each employee who works or is paid for 80 hours or more. Contributions shall be paid by the 15th of the month following the month in which they are earned.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 64

MONTHLY CONTRIBUTION RATES

| Employee Only | $  798.35 |
|---|---|
| Employee and Child(ren) | $1,369.67 |
| Employee and Spouse | $1,572.17 |
| Family | $2,003.17 |
| Waiver of Coverage | $     5.00 |

The Employer agrees to pay the corresponding rate for each employee based on the enrolled dependents, as determined by the Trust Fund Administrative Office. The Benefit Package includes medical, dental, prescription drug, vision, and life insurance.

The Employer is required to submit a $5 Administration Fee on behalf of each employee who elects to waive the health and welfare coverage. In order to waive coverage, the employee must complete a Waiver of Coverage form and submit proof of other group health coverage to the Administrative Office for review; the Administrative Office will advise the employee if the documentation is acceptable and if the waiver can be approved. **

INITIAL CONTRIBUTION RULE: Contributions on new employees are due the first of the month following the month in which the employee works, or is paid for, the required hours of employment.

BENEFITS AND ELIGIBILITY: The benefits provided under the Managed Care Plan and the rules by which employees and dependents, if applicable, become eligible for benefits shall be determined by the Board of Trustees of the Southern California Lumber Industry Welfare Fund and shall be described in the Plan Document and other materials published by the Trustees.

TRUST AGREEMENT: The Employer and Union subscribe to and agree to be bound by the provisions of the Trust Agreement creating the Southern California Lumber Industry Welfare Fund, as revised and restated September 1, 1986, and all amendments thereafter adopted. This includes Article IX, Sections 4 and 5, which gives the Board of Trustees the authority to set contribution rates on an annual basis.

CONFLICT WITH OTHER SECTIONS: The provisions of this Section supercede any and all other language contained in this Agreement (or any extension thereof or side agreement) if it conflicts with the language of this Welfare Contributions Section.

---------------------------------------------------------------------------------------------------------------------

EMPLOYER AND EMPLOYEE CONTRIBUTIONS: Upon proper written notification by a state certified physician, the Company will provide up to 3 months additional monthly Health and Welfare contributions payments for any employee who is disabled due to injury or illness when modified work is not available.

The Company is to pay their current negotiated contributions (see below).

Employees are to pay their current cost of the plan through November 30, 2017. All increases will be paid by the Employee through payroll deduction and any increases through December 1, 2018 and 2019.

The Company and the Union are to negotiate any increases each year of the contract. The Employees portion of the contributions will be deducted through payroll deduction.

- 3 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 65

Effective December 1, 2017

| | Rates per Month | Company Pays Managed Care Plan Per Month | Employee Pays Managed Care Plan Per month | 12/01/18 To be determined | 12/01/19 To be determined |
|---|---|---|---|---|---|
| Employee Only | $798.35 | $715.36 | $82.99 | | |
| Employee and Child(ren) | $1,369.67 | $1,221.92 | $147.75 | | |
| Employee and Spouse | $1,572.17 | $1,401.47 | $170.70 | | |
| Family | $2,003.17 | $1,783.62 | $219.55 | | |

Select Choice Plan

If the Bargaining Unit Employees choose to move to the Select Choice Plan, the Employer agrees to pay contributions to the plan and all increases for the term of the Agreement.

If the contribution amount determined by the Southern California Lumber Industry Health and Welfare Trust exceeds the amount the Employer is obligated to pay per the above schedule, the difference will be paid by the Employees through payroll deduction.

## Section 6. Retirement Fund Contributions

RETIREMENT CONTRIBUTIONS:  Beginning on the effective date of this Agreement, based on hours worked or paid for in the preceding month and continuing each month for the duration of the Agreement, or any further extension thereof, the Employer agrees to make monthly contributions in the amount of One hundred fifty one dollars and eighty cents ($151.80) for each employee who works or is directly paid for 80 hours or more to the Southern California Lumber Industry Retirement Fund.  Contributions shall be paid by the 15th of the month following the month in which they are earned.

INITIAL CONTRIBUTION RULE:  Contributions on new employees are due the first of the month following the month in which the employee works, or is paid for, the required hours of employment.

BENEFITS AND ELIGIBILITY:  The benefits provided under the Retirement Fund and the rules by which employees and beneficiaries, if applicable, become eligible for benefits shall be determined by the Board of Trustees of the Southern California Lumber Industry Retirement Fund and shall be described in the Plan Document and other material published by the Trustees.

TRUST AGREEMENT:  The Employer and Union subscribe to and agree to be bound by the provisions of the Trust Agreement creating the Southern California Lumber Industry Retirement Fund, as revised and restated September 1, 1986, and all amendments thereafter adopted.

CONFLICT WITH OTHER SECTIONS:  The provisions of this Section supercede any and all other language contained in this Agreement (or any extension thereof or side agreement) if it conflicts with the language of this Retirement Contributions Section.
--------------------------------------------------------------------------------------------------------------

Increases in contribution:  The Employer agrees to increase the monthly retirement contributions for each employee to the Southern California Lumber Industry Retirement Fund to the following amount:

- 4 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 66

Effective November 1, 2017 - $151.80 per month for each Employee in the bargaining unit who works the required hours.

Effective November 1, 2018 - $156.89 per month for each Employee in the bargaining unit who works the required hours.

Effective November 1, 2019 - $161.80 per month for each Employee in the bargaining unit who works the required hours.

### Section 7.  Union Security

There shall be no limitation on the Employer as to whom is employed or discharged, or continued in employment except that every employee not otherwise excluded shall be, or on the thirty first (31st) day after employment become a member, and remain a member in good standing of the Union.  Supervisory employees, guards, clean up people and office personal are excluded.  Clean up people shall not handle material for production.

After ten (10) years of service with the Employer, a Union member may advance out of the bargaining unit and would no longer be covered under the Labor Management Agreement.  He would be allowed to do bargaining unit work as a management employee.  The Employer may not have more than one (1) such employee for each three (3) bargaining unit employees or any portion thereof.

The Employer hereby agrees to call Local 721 for men before hiring off the street except in the case of New Hires and part time employees.

The Employer further agrees to terminate the employment of any employee covered by this Agreement upon written request of the Union in the event that such employee shall fail to comply with this Section 7, paragraph 1; provided that membership in the Union was available to said employee on the same basis, terms and/or conditions generally applicable to all other members or potential members, and the membership was not denied or terminated for reasons other than failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership.  Such employee shall not be re-employed by the Employer until notified by Local 721 that the employee has paid any and all initiation fees and/or dues accrued to date of his termination.

Such membership shall be determined by the possession by each employee on the first day of each month, a working card of Local 721, showing the current month's dues paid thereon.  The Union reserves the right to take any action it deems necessary to maintain and protect its membership at all times.

Dues Check Off:  The Employer agrees to withhold a sum equal to the Union Dues once a month from each employee on his payroll who works under the jurisdiction of Local 721 and promptly forward same to the Local so that each member may receive credit during the month said dues are deducted.  The Union agrees to keep the Company informed of the amounts to be deducted when there are changes.  This deduction may be made any week during the calendar month, at a time most convenient to the Employer, provided it is the same week each month.  This will also include new employees after they have been employed for a period of thirty one (31) days and may include initiation fees of new employees.

- 5 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 67

## Section 8.  Vacations

Each employee shall receive one (1) week's vacation with pay after one (1) year of service with the Company and two (2) weeks' vacation with pay after two (2) years of service with the Company, and three (3) weeks' vacation with pay after eight (8) years of service with the Company and four (4) weeks' vacation with pay after fifteen (15) years of service with the Company.

Vacation pay for each week of vacation shall be computed by multiplying the number of hours in the weighted average of the regularly scheduled workweeks during the qualifying year by the straight time hourly rate of pay but shall in no event be less than forty (40) nor more than forty eight (48) hours' pay for each week of vacation.  This paragraph shall only apply to employees who are hired to, and do, work a regular workweek in excess of 40 hours on a permanent basis.

Each employee shall be considered as having a year's continuous service and a year's eligibility for vacation for each completed year, starting from the date of his employment, in which he has worked at least fifteen hundred (1,500) straight time hours for the Company.  Vacations shall be annual and shall be taken any week in the calendar year immediately succeeding the year in which eligibility was established, at a time mutually agreeable to the Employer and employee, and shall be taken on consecutive days and shall start with the last shift of the employee's regularly scheduled workweek and shall terminate prior to the beginning of the first shift of his regularly scheduled workweek then in effect.  Vacation pay shall be paid prior to the start of the vacation.

If a member does not receive his or her vacation pay on, or near the anniversary date of his or her employment with the Employer, and in fact does not receive said vacation pay until after September 1, of any contract year, he or she shall get vacation pay at the current rate of pay for the actual time lost during his or her absence on vacation.  The intent is that every employee shall get the new rates three times during the three-year contract.

Employees who are entitled under the contract to three weeks' vacation upon mutual agreement between the Employer and the employee may take pay in lieu of the third weeks' vacation.

The employee shall take his vacation within the 24 weeks after he has become eligible for a vacation, and he shall not receive vacation pay in lieu thereof unless there are extenuating circumstances requiring his particular skill or service beyond the 24-week period.  Any eligible employee who is permanently laid off or discharged shall be paid for his accrued vacation at the time of such layoff or discharge.

If a recognized holiday occurs during the time an employee is absent on an earned vacation, he may absent himself for one more day and he shall become entitled to an additional eight (8) hours of pay at his straight time rate, providing he qualifies in all other respects under Section 4 hereof for such holiday pay.

Any employee who is separated from his employment after he has completed twelve months or more of continuous service with the Company since the date he was last employed, shall be granted one twelfth (1/12) of one, two or three weeks' vacation pay, whichever applies, for each month of service since his last anniversary date in which he has completed 100 straight time hours.

Any employee laid off through reduction of force or any other reason beyond the employee's control and re-employed within ninety (90) days, shall be considered as having been continuously employed and accumulating straight time hours worked at the rate of eight (8) hours for each working day during such layoff, as regards vacation rights.  However, this shall not apply to transient or casual employees.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 68

## Section 9.  Rights of Union Representatives

An accredited representative of the Union, upon presentation of his credentials showing that he is such accredited representative, shall have reasonable access to the Employer's place of business on official business during working hours and shall have the right and the option of having the shop steward with him in settling disputes.

## Section 10.  Seniority

The Employer agrees that seniority by classification and department shall prevail in making layoffs.  It is agreed that only employees who have been in continuous employment of the Employer for more than three (3) months shall have seniority rating.  No employee shall forfeit any seniority rights by reason of his service in the United States Armed Forces.

The Employer agrees to send the Union an up dated seniority list each year.

In filling vacancies in higher classifications, the Employer accepts the principle of exercising due regard for length of service, taking into account ability and efficiency to perform the duties of the higher classification, and the general practice will be followed of promoting those who, by length of service and ability to perform the duties of the higher classification, shall be deemed to have earned the promotion.

Any employee with one year or more of seniority who is laid off shall be returned to work, if a vacancy for his rating exists in his department, at his regular status, within nine (9) months from the date of layoff if he is then available for work.  Any employee with ninety (90) days or more but less than one year's seniority who is laid off shall be returned to work, if a vacancy for his rating exists in his department, at his regular status, within ninety (90) days from date of layoff if he is then available for work.  And, if an Employer rehires an employee after the nine (9) month recall has expired, but before a year has expired, the returning employee shall not lose any of his original seniority benefits accumulated prior to his layoff. However, this does not apply to any employee who has quit or has been discharged for cause.

It is also agreed that if an employee is sick at home, or in the hospital when he is called back after a layoff, he shall have seven (7) days after he is discharged by his doctor, or from the hospital, to claim his job.

It is further agreed that an employee shall not lose his seniority unless he has been off work due to illness or injury for a period of 12 months or longer, unless otherwise mutually agreed to by the parties and the Employer shall have the discretion of deciding if the worker can perform his duties properly.

An employee's seniority shall be terminated if he is on layoff and fails to report to work within three days after being sent a telegram to do so unless he can substantiate that he was prevented from doing to by a bona fide illness or injury.  Said period shall commence from the date on the telegram and such notice shall be sufficient if sent to the employee's last known address as shown on the Company records.  Similarly, an employee's seniority in employment shall be terminated if he is absent for three or more consecutive working days without notification to the Company and/or returns without furnishing the Company with a justifiable reason for such absence.  If an employee is absent for reasons beyond his control, that shall be deemed a justifiable reason for absence.

In the event of a layoff, an employee in a higher classification shall have the right to take a reduction into a previously held classification, provided he has the seniority and ability to perform the lower classification and, provided the layoff is an extended layoff of more than two weeks' duration. (Bumping back shall not apply to a layoff of less than two weeks.)  When a vacancy occurs in his previously held classification, he shall be returned to his former status.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 69

Any man who works a classification, or job eight (8) hours a day, five (5) days a week, has the right to work that same classification or job on overtime if said job does in fact work overtime. No man shall use seniority to deprive him of this overtime work. Example: If in fact a man is assigned to the job in question, whether or not it's a five (5) day per week job is therefore entitled to work the job if it should be necessary on overtime (seniority within department). This shall not preclude rotation of employment in slack periods.

### Section 11.  Shop Steward

The Shop Steward shall make himself known to the Employer. No Shop Steward shall be laid off for the reason that he is the Shop Steward. In the event the Shop Steward is laid off, the representative of the Union shall investigate the matter and if it has been discovered that this has been done in violation of this section, he shall have the right to file a grievance and proceed to arbitration as provided in Section 22.

### Section 12.  Mileage

On all outside work, an employee shall be entitled to mileage at the IRS rate (established by State Law) per mile from a point beginning at the plant to and from the job. Time spent to and from the job shall be paid for at the straight time rate.

### Section 13.  Pay Period

Employees shall be paid at least four (4) times per month in fairly equal installments on a day designated by the Employer. Employees shall be paid the full amount for wages due on each payday, except that in order to facilitate the handling of the payroll, the Employer shall be permitted to hold back not more than one (1) week's pay between such paydays.

### Section 14.  Call Provisions

Employees ordered to work for whom no work is provided shall receive a minimum of four (4) hours' pay, weather permitting. Employees who report for work and work more than four (4) hours shall be paid for actual hours worked, weather permitting. If any employee elects to leave his employment before the end of the shift, he shall be paid only for the actual time worked. If an employee is called to work on Saturdays, Sundays or Holidays, he shall be guaranteed four (4) hours work, but if he works more than four (4) hours, he shall be paid only for the actual time worked at the prevailing overtime rate for the particular shift worked. Employees shall be considered as having been ordered to work if the foreman, working superintendent, person in charge of operations or a representative of the Company fails to notify him not to report at the end of the previous workday or shift.

### Section 15. No Moonlighting Clause

No employee shall work any shift for any other employer on the same calendar day or during the same calendar week. (Better known as "Moonlighting.")

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 70

### Section 16.  Sick Leave Pay

A.  During the term of the contract, November 1, 2017 to October 31, 2020 every employee presently employed or subsequently employed shall accumulate paid sick leave at the rate of one half (½) day per calendar month in which he works at least 100 straight time hours until a maximum of 6 days paid leave is accumulated for the contract year.

B.  The employees have the right to use this sick leave as accumulated to its full extent, starting with the second day of illness and no doctor's certificate is required, but no more sick leave is allowed than the maximum provided in paragraph 1 during any contract year.

C.  At the end, to wit, on or about October 31 of each year, each employee shall receive in cash unused sick leave at the rate of 8 hours' straight time pay of each day accumulated but not used.

D.  If an employee is terminated or separated during the term of the contract, he shall receive the accumulated sick leave as provided in this contract at the rate of eight hours' straight time pay for each day of accumulated sick leave.  The words terminated and/or separated for all intents and purposes means leaving your employer for any and all reasons including quitting.

### Section 17.  Savings Clause

If any word, clause, section, or part of this contract, or the application of any such word, clause, section, or part of this contract shall be held invalid, the parties hereto declare that they would have executed this Agreement without the inclusion of such word, clause, section, or part so held invalid, and the remainder of this Agreement, or the application of such word, clause, section, or part to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

### Section 18.  Incentive Compensation

The Company may, at its sole discretion, without bargaining, introduce, modify, delete or amend production/attendance bonuses or incentive pay plans as long as the employee is not compensated at a rate less than the minimum hourly rate for his classification provided for in this Agreement.  (Exhibit B, Incentive Program, is specifically excluded from this Section.)

### Section 19.  New Hire Program

A.  All new employees hired after November 1, 2013 shall be classified as New Hires and will be compensated in the following manner:

| | |
|---|---|
| Months 1 thru 6: | $10.50 per hour |
| Months 7 thru 12: | $11.00 per hour |
| Months 13 thru 18: | $11.50 per hour |
| Months 19 thru 24: | $12.00 per hour |

B.  After 24 months of continuous employment, the employee would be classified as a Helper and would receive the current contract rate for Helper at the time of reclassification.

C.  For purposes of completion of the New Hire Program, the Company will give any employee who is laid off and recalled during the time period provided above full credit for all time actually spent prior to layoff.

- 9 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 71

D. To be hired as a New Hire hereunder, the New Hire must be inexperienced. An inexperienced employee shall be defined as an employee with less than two (2) years of comparable work experience in a bargaining unit in a like company under a Local 721 contract. New and inexperienced employees hired under this Section, will be on a 90-day probationary period.

E. Notwithstanding anything to the contrary in this Agreement, employees hired as New Hires after September 1, 1999, shall not have Health and Welfare payments made on their behalf by the Company until they have completed their first 90 days of continuous employment. Pension payments shall not be paid on behalf of such employees by the Company until they have completed their first six (6) months of continuous employment with the Company.

## Section 20.  Training Program

When the Employer determines that an employee shall be trained for advancement to any higher classification, such employee shall progress in pay in the following manner:

1. Upon reclassification the employee shall receive an increase in the amount of 20% of the difference between his rate of pay at the time of reclassification and the contract rate of pay for which he is being trained.

2. Upon completion of each three (3) months of training the employee shall receive an additional 20% of the difference between his rate of pay at the time of reclassification and the contract rate of pay for which he is being trained.

3. Upon completion of 12 months of training the employee shall receive the full contract rate of pay in effect for the position for which he is being trained.

## Section 21.  No Discrimination

No employee covered by this Agreement shall be employed for any lower wage than this Agreement calls for. No employee shall be discharged or discriminated against for upholding union principles or who serves on a Union committee, and he shall not lose his position or be discriminated against for this reason. The discharge of any non-probationary employee may be processed through a grievance committee procedure by the Union whenever the discharge is believed to be without just cause.

## Section 22.  Successors and Assigns

This Agreement applies to the Company, its successors and assigns, and the Company agrees that it shall inform any successor, purchaser, assignee or transferee of the Company, or of any part thereof to execute and be bound by this Agreement. The Company shall remain liable to the Union and all employees for failure to comply with this provision.

This provision of this Agreement shall be binding upon the assigns or successors of the Company, including any and all such assigns or part thereof made as a result of merger with or sale to other company or companies.

## Section 23.  Grievance & Arbitration

Any dispute arising under this Agreement or concerning the interpretations or application of any of the provisions hereof shall be resolved pursuant to the following procedures.

Step 1. If an employee or the Union has a dispute with the Company, it shall be verbally brought to the attention of the immediate foreman or supervisor within five (5) working days from occurrence or the

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 72

knowledge of such a dispute. (In the case of a termination, the employee may go directly to Step 2. The grievance must be submitted in writing within five (5) working days of the termination.)

Step 2. If the dispute is not resolved in ten (10) working days thereafter, it shall become a grievance, be reduced to writing and submitted to the Company. The Union and the Company shall meet within five (5) working days of receipt of grievance and try to resolve the conflict within ten (10) working days. Any grievance not filed with the Company in writing within fifteen (15) days from the incident giving rise to the grievance shall be deemed null and void.

Step 3. If the grievance is still not resolved it shall be taken to a mutually agreeable mediator employed by the Federal Mediation and Conciliation Service. The mediator will assist the parties in settling the grievances, but cannot render any written or binding decision. Either party reserves the right to waive the use of a Federal Mediator and proceed directly to arbitration.

Step 4. If the grievance is not resolved within the ten (10) working days mentioned above, either party has the right to move this grievance to arbitration. A request should be made to the Federal Mediation and Conciliation Service (FMCS) to provide a list of five (5) names of available Arbitrators. An Arbitrator shall be selected from this panel of five (5) by alternately striking names until one (1) name remains. The remaining name shall be the selected Arbitrator. (The party to strike first is to be selected by a toss of a coin). The selected Arbitrator will hear and decide the case, but cannot change or amend any part of this Agreement. The decision of the Arbitrator shall be binding on both parties. The expense of the arbitrator shall be borne equally by the Employer and the Union. All other expenses shall be borne by the party incurring them.

Note: Time limits maybe extended by mutual agreement. Extensions must be in writing signed by the Employer and the Union.

## Section 24.  Management Rights

It is understood and agreed that the Employer will have the right to manage and operate its business in such a manner as it sees fit, except to the extent that it is restricted or prohibited by the express terms of this Agreement.

## Section 25.  Discharge and Discipline

No employee shall be disciplined or discharged without just cause.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 73

## Section 26.  Duration of Agreement

This Agreement shall become effective as of the first day of November 2017, and shall continue until October 31, 2020, and thereafter from year to year unless either party wishes to modify, amend or terminate the Agreement.  Notice of such intention to modify, amend or terminate shall be given by either party in writing, at least ninety (90) days prior to the 31st day of October 2020 or the Agreement shall be considered as renewed for another year.  In the event of a notice of intention to modify, amend or terminate, negotiations shall begin between the parties within fifteen (15) days after delivery of such notice.  If the negotiations are not completed by midnight, October 31, 2020, or any subsequent year, the Agreement shall terminate as of midnight, October 31, 2020, or any subsequent year, but negotiations may be extended beyond that period by mutual consent of the negotiating parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Peery Bros. Lumber Company. Inc.
140 N. Willow Ave.
City of Industry CA  91744
(626) 330-7478  fax:  (626) 968-0435

Cabinet Makers, Millmen and Industrial
Carpenters Local 721
10015 Rose Hills Rd.
Whittier CA 90601
(562) 695-0571  fax:  (562) 695-1159

Celeste Peery, President

3/19/18
Date

Jose Amador, Business Representative

3/15/18
Date

- 12 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 74

### 1.  Exhibit A.  Wage Rates

The following MINIMUM wage rates shall apply to all employees covered by this Agreement who work for the Employer.  The MINIMUM wage rates shall become effective as of 12:01 A.M., November 1, 2017 and shall remain in effect through 12:00 Midnight October 31, 2020.

| CLASSIFICATIONS | 11/1/16 Current Classification Rates | 11/1/17 .25¢ Increase | 11/1/18 .25¢ Increase | 11/1/19 .25¢ Increase |
|---|---|---|---|---|
| Helpers/Handlers | $16.57 | $16.82 | $17.07 | $17.32 |
| Utility Men/Driver Class "B" | $17.09 | $17.34 | $17.59 | $17.84 |

Those employees who are over scale shall get the same increase from the wage rates and those increases shall be added to their over scale rates.

Foremen shall receive a minimum of $0.75 per hour more than the highest classification being performed under their supervision.

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 3 to COMPLAINT - 75

### Exhibit B. Incentive Bonus Program

The Incentive Bonus Program is designed to reward full time employee for the costs saved and improved customer services gained through the highest level of attendance, punctuality and the absence or work rule violations.  The incentive bonuses to be paid under this Program will only be deemed to have been earned and payable to those employees who fully comply with the following requirements of the Program.

A.  Employees will be eligible to receive a monthly bonus during the term of this Agreement calculated on the basis of every hour actually worked only if employees do not have any of the following during the month involved:

1.  one or more absences

2.  two or more tardies

3.  one or more incidents of leaving before the end of the employee's scheduled shift

4.  one or more incidents of unapproved trading of shifts-with another employee after the work schedule is posted.

5.  one or more incidents of arriving at work on time without tools, boots, or uniform, if required

6.  one or more suspensions or a discharge

7.  one or more injuries

8.  Two or more errors or mistakes in receiving, delivering, loading, and pick up.

Pick Up:   Drivers Responsibility

Receiving: Whoever receives and signs for Material

Deliveries: Both Load Builder and Driver

B.  Only the following types of absences do not affect the monthly attendance record of an individual:

Prescheduled and approved in writing vacations, floaters, days that the company is closed to observe a holiday, when an employee is sent home by the Company because of inclement weather and/or lack of work to perform.

C.  Bonuses will be paid less applicable deductions once a month.

D.  An employee will become eligible to earn bonuses under this Program effective the first of the month following completion of the employee's probationary period.

E.  Bonus amounts for the duration of this Agreement will be one dollar fifty five cents ($1.55) per hour up to forty hours per week.

- 14 -

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                    EXHIBIT 3 to COMPLAINT - 76

# EXHIBIT 4

EXHIBIT 4 to COMPLAINT - 77

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

**Southern California Lumber Industry
Retirement Fund**
Established Jointly by Employers and Local Unions

Telephone (562) 463-5080 ◆ (800) 824-4427 ◆ Facsimile (562) 463-5894

October 29, 2019                               **VIA** CERTIFIED MAIL

Ms. Celeste Peery
1888 N Kelly Ave
Upland, CA 91784

Re:  Notice of 2018 Complete Withdrawal Liability and Demand for Payment

Dear Ms. Peery:

We understand that Peery Brothers Lumber Company Inc. ceased making contributions to the Plan in the 2018 Plan Year, thus effectuating a complete withdrawal from the Southern California Lumber Industry Retirement Fund (Fund) as defined by Section 4203 of the Employee Retirement Income Security Act (ERISA).  This letter serves as a formal notice of withdrawal liability and demand for payment as required by ERISA Section 4219.

In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the calculation from the Fund's actuaries indicates that the withdrawal liability attributable to Peery Brothers Lumber Company Inc., is $173,105.  Details regarding the calculation are enclosed with this letter and set forth in Exhibits 1 and 2.  A payment schedule as required by ERISA Section 4219(c) is set forth on Exhibit 3 enclosed with this letter. Demand is hereby made that Peery Brothers Lumber Company Inc. make payments in accordance with the enclosed schedule.

Please be advised that any request for review or objection to the assessment pursuant to ERISA Section 4219(b)(2) must be made within 90 days of receipt of this notice and demand.  Please also note the time restrictions imposed by ERISA Section 4221 regarding arbitration apply to this withdrawal liability assessment and demand.  This letter is intended as notice of withdrawal liability and demand for payment to all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

Finally, please note that this notice of assessment is based on the Fund's understanding that Peery Brothers Lumber Company Inc. does not have any contributing affiliates to the Plan.  If the Fund's understanding is not correct, you must notify the Fund immediately with the names and addresses of any contributing employer groups so that the Fund can review the information for a possible correction to this assessment.

Should you have any questions or comments, please do not hesitate to contact this office.

Sincerely,

Lance Phillips
Administrator

LP:al
Enclosures

cc:  Local Union 721 – Mr. Oscar Cordova & Fernando Rojas



Exhibit 1

Southern California Lumber Industry Pension Plan
Employer Withdrawal Liability Worksheet for Withdrawals from January 1, 2018 through December 31, 2018

Employer Name:     Peery Bros. Lumber Company, Inc.

| Year Ended December 31[a] | Unamortized Balance of Withdrawal Liability Pools | | Contributions During 5-Year Period Ending with Date Pool Established | | | | Liability Allocated: [(7)/(6)] x [(2)+(3)] |
|---|---|---|---|---|---|---|---|
| | Basic Pools | Reallocated Pools | Total Plan Contributions[b] | Contributions for Employers that Ceased to Participate[c] | Total Contributions for Employers Continuing to Participate [(4)-(5)] | Obligated Employer Contributions | |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| 2009 | 8,905,084 | 0 | 7,108,712 | 377,357 | 6,731,355 | 4,094 | 5,416 |
| 2010 | 19,188,172 | 26,800 | 6,614,129 | 210,896 | 6,403,233 | 7,521 | 22,559 |
| 2011 | 27,136,009 | 284,332 | 6,106,604 | 302,142 | 5,804,462 | 10,298 | 48,648 |
| 2012 | 9,564,812 | 219,487 | 5,572,065 | 362,105 | 5,209,960 | 13,821 | 25,956 |
| 2013 | (5,886,906) | 2,136,251 | 5,195,610 | 230,594 | 4,965,016 | 18,078 | (13,656) |
| 2014 | 126,496 | 4,030,850 | 5,189,400 | 546,357 | 4,643,043 | 16,920 | 15,150 |
| 2015 | 21,627,914 | 268,723 | 5,322,898 | 480,896 | 4,842,002 | 15,548 | 70,312 |
| 2016 | 12,026,042 | 25,760 | 5,623,414 | 326,688 | 5,296,726 | 15,120 | 34,403 |
| 2017 | (15,335,773) | 1,350,040 | 6,121,301 | 196,844 | 5,924,457 | 15,120 | (35,693) |

A.  Gross liability: (Sum of Column 8):                                           173,105

B.  De minimis: Min(0.75%x(2017 UVBL), $50,000):                                   50,000

C.  Deductible: $100,000 + (B) - (A), but not greater than (b) nor less than zero       0

D.  Net Withdrawal Liability: (A) - (C), but not less than zero                   173,105

[a]Years not shown have no withdrawal liability component.  Up to twenty years is possible.
[b]Total Plan Contributions are as reported in the auditor's annual financial statement.
[c]Provided by Fund Office.

VENUTI & ASSOCIATES

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 79

March 2019

Exhibit 2

Southern California Lumber Industry Pension Plan

Employer Withdrawal Liability Worksheet for Withdrawals from January 1, 2018 through December 31, 2018

Employer Name:     Peery Bros. Lumber Company, Inc.

| Year | Contributions | Year | Contributions |
|------|--------------|------|--------------|
| 2005 |              | 2012 | 3,523.20 |
| 2006 |              | 2013 | 4,257.20 |
| 2007 |              | 2014 | 2,936.00 |
| 2008 |              | 2015 | 2,055.20 |
| 2009 | 4,093.60     | 2016 | 2,348.80 |
| 2010 | 3,427.20     | 2017 | 3,523.20 |
| 2011 | 2,776.80     | 2018 | 749.00 |

March 2019

VENUTI & ASSOCIATES

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 80

Exhibit 3

Southern California Lumber Industry Pension Plan
Employer Withdrawal Liability Worksheet for Withdrawals from January 1, 2018 through December 31, 2018
Withdrawal Liability Annual Assessment
Employer Name:          Peery Bros. Lumber Company, Inc.

| Year | Contributions | Base Units | 3-Yr Average Base Units | Contribution Rate | Annual Assessment |
|------|---------------|------------|-------------------------|-------------------|-------------------|
| 2003 | | | | | |
| 2004 | | | | | |
| 2005 | 0.00 | | | | |
| 2006 | 0.00 | | | | |
| 2007 | 0.00 | | | | |
| 2008 | 0.00 | | | | |
| 2009 | 4,093.60 | 43 | | | |
| 2010 | 3,427.20 | 36 | | 95.20 | |
| 2011 | 2,776.80 | 31 | 36.67 | 95.20 | |
| 2012 | 3,523.20 | 26 | 31.00 | 146.80 | |
| 2013 | 4,257.20 | 29 | 28.67 | 146.80 | |
| 2014 | 2,936.00 | 20 | 25.00 | 146.80 | |
| 2015 | 2,055.20 | 14 | 21.00 | 146.80 | |
| 2016 | 2,348.80 | 16 | 16.67 | 146.80 | |
| 2017 | 3,523.20 | 24 | 18.00 | 151.80 | |
| 2018 | 749.00 | 5 | 15.00 | 156.89 | |
| Highest | | | 36.67 | 156.89 | $5,753.16 Annual |
| | | | | | $482.14 Monthly |

PV of Monthly Payments for 20 years at 2.34%                        92,728
Employer's Share of UVB Not assessed due to 20-year limit            80,377

VENUTI & ASSOCIATES

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 81

March 2019

SOUTHERN CALIFORNIA LUMBER INDUSTRY TRUST FUNDS
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784

RETURN RECEIPT
REQUESTED

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 82



USPS TRACKING #

9590 9402 3160 7166 3601 84

**United States Postal Service**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•   [LP·tv]

Attn: Mr. Lance Phillips
SOUTHERN CALIFORNIA LUMBER
INDUSTRY TRUST FUNDS
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906

EXHIBIT 4 to COMPLAINT - 83

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784

9590 9402 3160 7166 3601 84

2. Article Number (Transfer from service label)

7074 4666

Southern California Industry Number

Industry Return Mail (not label)

v. Peery Bros. PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



## Certified Mail service provides the following benefits:

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

*Important Reminders:*

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is not available for international mail.
- Insurance coverage is not available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, Domestic Return Receipt; attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.

- Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
- Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
- Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**

PS Form 3800, April 2015 (Reverse) PSN 7530-02-000-9047

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 85



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required            $
☐ Adult Signature Restricted Delivery $

Postage
$

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784
EXHIBIT 4 to COMPLAINT - 86

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7018 0680 0000 7074 4556
7018 0680 0000 7074 4556

**CERTIFIED MAIL**
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

**CERTIFIED MAIL**

7018 0680 0000 7074 4666



SOUTHERN CALIFORNIA LUMBER INDUSTRY TRUST FUNDS
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784

**RETURN RECEIPT REQUESTED**

Southern California Lumber Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 87



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 3160 7166 3601 84

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

[LP:tv]

Attn: Mr. Lance Phillips
SOUTHERN CALIFORNIA LUMBER
INDUSTRY TRUST FUNDS
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906

EXHIBIT 4 to COMPLAINT - 88

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784

9590 9402 3160 7166 3601 84

2. Article Number (Transfer from service label)

7018 0680 0000 7074 4666

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                              ☐ Agent
                               ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
  Delivery
☐ Return Receipt for
  Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
  Restricted Delivery

Domestic Return Receipt

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Celeste Peery
1888 N KELLY AVE
UPLAND, CA 91784

9590 9402 3160 7166 3601 84

2. Article Number (Transfer from service label)

7018 0680 0000 7074 4666

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
10-31-18

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

USPS TRACKING #

9590 9402 3160 7166 3601 84

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Attn: Mr. Lance Phillips          [LP:tv]
SOUTHERN CALIFORNIA LUMBER
INDUSTRY TRUST FUNDS
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906

NOV 12 2019

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 4 to COMPLAINT - 90

# EXHIBIT 5

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 5 to COMPLAINT - 91

**Southern California Lumber Industry
Retirement Fund**

Established Jointly by Employers and Local Unions

Telephone (562) 463-5080 ◆ (800) 824-4427 ◆ Facsimile (562) 463-5894

VIA CERTIFIED MAIL

January 10, 2020

Mr. Celeste Peery
Peery Brothers Lumber Company Inc.
1888 N. Kelly Ave.
Upland, CA  91784

Re: Notice of Failure to Pay Withdrawal Liability and Demand for Cure

Dear Ms. Peery:

Please allow this letter to serve as notice of failure to pay withdrawal liability and demand for cure in accordance with Section 4219(c) (5) of the Employee Retirement Income Security Act. (ERISA)

.By the letter dated September 11, 2019, the Southern California Lumber Industry Retirement Fund ("Fund") provided formal notice of withdrawal liability and demand for payment. The letter enclosed a payment schedule. No payments have been received.

Please be advised if payment in accordance with the schedule is not made in full within 60 days of your receipt of this letter. Perry Brothers Lumber Company Inc. will be in default of its withdrawal liability assessment. Should that occur, the entire assessment and interest shall be immediately due.

This notice and demand for cure is intended as notice and demand to Perry Brothers Lumber Company Inc. and all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

Thank you for attention to this issue. Should you have any questions or comments, please do not hesitate to contact this office.

Sincerely,

Lance Phillips
Administrator

LP:vp
Enclosures

cc: Local Union 721 – Mr. Oscar Cordova & Fernando Rojas



U.S. Postal Service™
**CERTIFIED MAIL® RECE**
*Domestic Mail Only*

For delivery information, visit our website a

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy)          $
- ☐ Return Receipt (electronic)        $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required           $
- ☐ Adult Signature Restricted Delivery $

Postage

Mr. Celeste Peery
Peery Brothers Lumber Comp
1888 N. Kelly Ave.
Upland. CA 91784

PS Form 3800, April 2015 PSN 7530-02-000-9047

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Celeste Peery
Peery Brothers Lumber Company Inc.
1888 N. Kelly Ave.
Upland. CA 91784

9590 9402 3160 7166 3602 14

2. Article Number (Transfer from service label)

7018 0680 0000 7074 4703

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON** 

A. Signature
X

B. Received by (Printed Name)

D. Is delivery address different from
If YES, enter delivery address

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☑ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.                    EXHIBIT 5 to COMPLAINT - 93



SOUTHERN CALIFORNIA LUMBER INDUSTR
1200 Wilshire Blvd., Fifth Floor
Los Angeles, CA 90017-1906



7018 0680 0000 7074 4703

Mr. Celeste Peery
Peery Brothers Lumber Company Inc
1888 N. Kelly Ave.
Upland, CA 91784

RETURN RECEIPT
REQUESTED

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 5 to COMPLAINT - 94

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Celeste Peery
Peery Brothers Lumber Company Inc.
1888 N. Kelly Ave.
Upland, CA  91784

9590 9402 3160 7166 3602 14

2. Article Number (Transfer from service label)

7018 0680 0000 7074 4703

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

EXHIBIT 5 to COMPLAINT - 95

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.



**SOUTHERN CALIFORNIA LUMBER INDUSTF**
**1200 Wilshire Blvd., Fifth Floor**
**Los Angeles, CA 90017-1906**

7018 0680 0000 7074 4703

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 90017 $ 006.80⁰
02 4W
0000343442 JAN 16 2020

Mr. Celeste Peery
Peery Brothers Lumber Company Inc.
1888 N. Kelly Ave.
Upland, CA 91784

**RETURN RECEIPT**
**REQUESTED**

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 5 to COMPLAINT - 96

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Celeste Peery
Peery Brothers Lumber Company Inc
1888 N. Kelly Ave
Upland CA 91784

9590 9402 3160 7166 3602 14

2. Article Number (Transfer from service label)

7018 0680 0000 7074 4703

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Southern California Lumber
Industry Retirement Fund, et al.
v. Peery Bros. Lumber Co., Inc.

EXHIBIT 5 to COMPLAINT - 97